**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

**Patrick J. Fisher, Jr.**                                                              **Elisabeth A. Shumaker**
**Clerk**                                                                                 **Chief Deputy Clerk**

June 15, 1998


TO:     ALL RECIPIENTS OF THE PUBLISHED OPINION

RE:     97-8053, *In re: Straight*
        Filed June 9, 1998


The published opinion contains a typographical error in the attorney appearances section, on page 2 of the slip opinion. Mr. Leonard H. Gerson of the firm Angel & Frankel, not Angel & Grankel, appeared for the amicus curiae. The corrected section should appear as follows:

Leonard H. Gerson, Angel & Frankel, P.C., New York, New York, for Amicus Curiae.

Please make the appropriate correction to your copy of the opinion.

                                        Very truly yours,

                                        Patrick Fisher, Clerk


                                        Keith Nelson
                                        Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 9 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re: BEVERLY A. STRAIGHT and
MILTON L. STRAIGHT, a.k.a. Milton
Lloyd Straight, Milton Straight, Mickie
Straight,

     Debtors,

------------------------------------------------

WYOMING DEPARTMENT OF
TRANSPORTATION,

     Plaintiff-Appellant,

v.

BEVERLY A . STRAIGHT and MILTON
L. STRAIGHT,

     Appellees.

------------------------------------------------

BUSINESS BANKRUPTCY LAW
COMMITTEE OF THE NEW YORK
COUNTY LAWYERS' ASSOCIATION,

     Amicus Curiae.

No. 97-8053

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 96-CV-184)**

Jennifer Ann Evans, Senior Assistant Attorney General (William U. Hill, Attorney General, with her on the briefs), Cheyenne, Wyoming, for Plaintiff-Appellant.

Leonard H. Gerson, Angel & Frankel, P.C., New York, New York, for Amicus Curiae.

David J. Bederman (Stephen R., Winship, Winship & Winship, P.C., Casper, Wyoming, with him on the briefs) Professor at Law, Emory University, Atlanta, Georgia, for Debtors-Appellees.

---

Before **SEYMOUR,** Chief Judge, **PORFILIO,** Circuit Judge**,** and **HENRY**, Circuit Judge.

---

**PORFILIO**, Circuit Judge.

---

The State of Wyoming, through its Department of Transportation (Department), challenges the jurisdiction of the bankruptcy court to enter an order directing the Department to pay attorneys' fees and costs related to its violation of stay provisions of the Bankruptcy Code found in 11 U.S.C. §§ 352 and 525. Wyoming claims the sovereign immunity vested in it by the Eleventh Amendment puts its agencies beyond the jurisdictional reach of the bankruptcy court. Sitting in its appellate capacity, the district court disagreed, ruling Congress had the power to abrogate states' immunity when enacting the Bankruptcy Code. In an alternative ruling, the district court also held the State of Wyoming waived its immunity when its Workers' Safety and Compensation

Division and its Department of Employment filed proofs of claim in the bankruptcy case of appellee, Ms. Beverly Straight. We agree with the district court that when the State sought the benefits available to it under the Bankruptcy Code, it acceded to the jurisdiction of the bankruptcy court. Therefore, it cannot stand upon sovereignty to avoid the onus of Code provisions it now finds disagreeable.

## BACKGROUND

Ms. Straight, doing business as Centerline Traffic Control & Flagging, filed a petition for relief under Chapter 13 of the Bankruptcy Code. At the time of filing, Ms. Straight was certified by the State of Wyoming as a Disadvantaged Business Enterprise (DBE). Approximately one month after filing, the Department of Transportation notified Ms. Straight of its intent to decertify her DBE status. In its notice, the Department stated:

> 49 CFR 23.45(f)3(iv) require[s] Wyoming Department of Transportation to "analyze the bonding and financial capacity of the firm" for eligibility in the DBE program. DBE Definition 1.A(b) states a "disadvantaged business" means a small business concern is one "whose management and daily business operation are controlled by one or more of the socially and economically disadvantaged individuals who own it."

> It is apparent that you have lost the ability to control the financial capacity of this firm. By filing for Chapter 13 bankruptcy, you have also lost the ability to control your business; that control now lies in the hands of the Bankruptcy Court and the Bankruptcy Trustee.

The following month, the Department did decertify Ms. Straight, and in response, she filed a motion in the bankruptcy court for an order to show cause and for a contempt citation. Upon consideration, the court issued an order finding the State had violated the

automatic stay provision of 11 U.S.C. § 362 and held the decertification was "wrongful" under § 525(a) which prohibits certain discriminatory action against a bankruptcy debtor. The court ordered the Department to recertify Ms. Straight as a DBE and to pay Ms. Straight's attorneys' fees and costs.

Although the State did not appeal that order, it did appeal a subsequent order approving the amount of fees and costs to be awarded Ms. Straight. The district court affirmed, disagreeing with the State's contention the bankruptcy court had no jurisdiction over it. The court reasoned 11 U.S.C. § 106(a), putatively abrogating the State's Eleventh Amendment immunity, was constitutionally enacted pursuant to the Fourteenth Amendment; hence, Congress had the power and intent to abrogate Wyoming's sovereign immunity. *In re Straight*, 209 B.R. 540, 555 (D. Wyo. 1997). Alternatively, the court held proofs of claim filed by the Wyoming Department of Employment and the Wyoming Workers' Safety and Compensation Division had waived the State's Eleventh Amendment immunity. *Id.* The district court held pursuant to 11 U.S.C. § 106(b), the State's claim for unpaid taxes arose from the same transaction as its attempt to decertify the Debtor. Thus, having filed the claims for unpaid taxes and premiums, the State waived its immunity against the Debtor's action. *Id.* at 557. This appeal followed.

## I.

Relying principally on *Seminole Tribe v. Florida*, 517 U.S. 44 (1996) (upholding Eleventh Amendment immunity in the face of a federal statute granting federal courts

- 4 -

jurisdiction over a state), the State urges us to hold the district court erred in concluding 11 U.S.C. § 106(a) abrogates the State's immunity in bankruptcy. Nonetheless, we do not reach that argument. While we do not denigrate the importance of the § 106(a) issue raised by the State, we believe it has been mooted by the State's own action.

We start from the general premise that the law of bankruptcy is founded upon principles of equity. That foundation requires all persons or entities in the same class must be treated alike. Thus, creditors coming to the bankruptcy court for relief expect they will fare no better or no worse than others of their stature. Moreover, the whole concept of bankruptcy cannot succeed without a careful application of these principles and a forthright dedication to their significance.

For that reason, any governmental entity which elects to join the ranks of creditors seeking benefits the bankruptcy court can allocate must recognize that resort is subject to the mantle of equity. Indeed, "[w]hen the State becomes the actor and files a claim against the [bankruptcy] fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim." *Gardner v. New Jersey*, 329 U.S. 565, 574 (1947). The Seventh Circuit has recently reached a similar conclusion. In *Dekalb County v. Platter,* _____ F.3d _____, No. 97-2761, 1998 WL 138847 (7th Cir. Mar. 26, 1998), the court was called upon to resolve whether the state's claim of Eleventh Amendment immunity barred an action in bankruptcy court to determine dischargability of a debt. Relying in part upon *Gardner*, the court concluded it did not because the state

had waived the bar by filing the case in the first instance. Neither of these cases relies upon any basis for decision other than the state's having acceded to the jurisdiction of the bankruptcy court by seeking its relief against the debtor.

In 1994, Congress amended 11 U.S.C. § 106(b) to alert any governmental unit that when it voluntarily enters the arena of the bankruptcy court seeking relief in a debtor's case, it may do so as a creditor and not a sovereign. The statute provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

This enactment codifies the *Gardner* rule, see *2 Collier on Bankruptcy* ¶ 106.05 (15th ed. rev. 1997), but narrows its applicability to permit the debtor to proceed only against claims asserted by the state that arose out of the same transaction or occurrence as a claim previously filed by the state in the bankruptcy estate.

**II**.

Ms. Straight contends § 106(b) appropriately governs the State's claim of Eleventh Amendment immunity in this case. Consideration of the contention, then, requires we answer four questions: 1) What is a "governmental unit" and does Wyoming fit that definition in this case; 2) if so, has the Debtor asserted a claim against Wyoming that is "property of the estate"; 3) did that claim arise "from the same transaction or occurrence" as the proofs of claim previously filed by the State? Finally, if we decide § 106(b) is

germane, we then must determine whether it has been adversely affected by *Seminole Tribe*.

The foundation for the State's argument that § 106(b) is inapplicable is based upon a creative, albeit limited, view of the definition of "governmental unit" as that term is used in § 106(b). Wyoming maintains its Department of Transportation is a different "governmental unit" from the Department of Employment and the Workers' Safety and Compensation Division, both of which filed claims against the estate.[1] Indeed, appellant asserts the Department of Transportation is a governmental unit distinguishable from the State itself. That position is unsupportable.

In the context of the Bankruptcy Code, "governmental unit" means:

United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government . . . .

11 U.S.C. § 101(27). The plain language of this section, then, makes clear a state, or a department, agency, or instrumentality of a state are governmental units for the purposes of the Bankruptcy Code. Nonetheless, Wyoming argues the conjunction "or" separating the word "State" from the words "department, agency, or instrumentality of . . . a State"

---

[1]The Department of Employment filed a claim for $2,474.88 for unpaid unemployment taxes and interest, and the Workers' Safety and Compensation Division filed a claim for $27,597.42 for unpaid workers' compensation premiums.

implies a governmental unit "can mean either a state or a state agency, but it cannot mean both at the same time." Wyoming cites no authority for this conclusion.

We view the theory as rather remarkable. Like most states, Wyoming acts through its departments and agencies. The Wyoming Supreme Court, for example, has noted a school district, as a creation of the state, cannot sue the state because "[o]ne cannot sue himself." *Carbon County Sch. Dist. No. 2 v. Wyoming State Hosp.*, 680 P.2d 773 (Wyo. 1984). In adopting the Wyoming Code of Civil Procedure, the state legislature, has made clear the state and its agencies are the same. *See* Wyo. Stat. § 1-39-103(a)(vi) (1998) ("'State' or 'state agency' means the state of Wyoming or any of its branches, agencies, departments, boards, instrumentalities or institutions."). *See also* **Wyoming v. Board of County Comm'rs**, 642 P.2d 456, 457-58 (Wyo. 1982) (County, as agency of the state, cannot sue the state because it is "part of the state itself" and "[o]ne cannot sue himself."). Also, in a similar case, we have held the federal government and its agencies are the same and unitary for the purposes of bankruptcy. *Turner v. SBA*, 84 F.3d 1294, 1299 (10th Cir. 1996).

We are convinced the State of Wyoming is not an amalgam of separate, independent, and self-sustaining branches. Like the federal government, in bankruptcy it should be regarded as one unified entity with different arms through which it carries out the affairs of the state. For that reason, Wyoming cannot succeed in this case with its

contention the Department of Transportation is not the same governmental unit as its sister agencies for the purpose of applying § 106(b).

### III.

That leads us to consideration of whether Ms. Straight has asserted a claim against Wyoming that is property of the estate. Although one might expect that claims of this nature are normally for money damages, the action before us at this time seeks a recovery that is not essentially monetary. In filing her motion to show cause and for contempt, Ms. Straight, as a Chapter 13 debtor, initially sought the restoration of the certificate she owned prior to bankruptcy that was essential to the conduct of her postpetition business. Without that certificate, she could not conduct her affairs as a flagging contractor, nor could she effect a Chapter 13 plan. We believe, therefore, there can be no doubt that in this quest the Debtor was in every sense seeking the return of property of the estate as that concept is broadly defined in 11 U.S.C. § 541(a)(1). *See **In re National Cattle Congress, Inc**. 179 B.R. 588, 593 (Bankr. N.D. Iowa 1995) (a license essential to the conduct of the debtor's business is property of the estate); **In re Central Ark. Broad. Co.**, 170 B.R. 143, 146 (Bankr. E.D. Ark. 1994) (same); **In re Draughon Training Inst**., **Inc**., 119 B.R. 927, 931 (Bankr. W.D. La. 1990) (same).

### IV.

Finally, we must determine whether the claims asserted by the Department of Employment and the Workers' Safety and Compensation Division "arose out of the same

transaction or occurrence" as the claim brought by the Debtor. As noted by the district court, this concept is not peculiar to bankruptcy. It follows the language of Fed. R. Civ. P. 13(a) dealing with compulsory counterclaims. *See* 2 **Collier on Bankruptcy** ¶ 106.5 (15th ed. rev. 1997). We need not delve deeply into Rule 13(a) analysis here, however, as the State has furnished sufficient evidence to remove all doubt that the filings of its proofs of claim against the Chapter 13 case were linked to the decertification which prompted Ms. Straight's initial action.

Following the original ruling of the bankruptcy court holding the Department of Transportation had violated both §§ 362 and 525(a) of the Bankruptcy Code, the Department filed a motion for new trial. In an effort to convince the bankruptcy court that it had taken no prejudicial action against the Debtor prohibited by § 525, the Department asserted in the motion:

> WYDOT [Wyoming Department of Transportation] did not violate 11 U.S.C. § 525(a) because it did not suspend Debtor's Certification based on the Chapter 13 filing. WYDOT suspended Debtor **based** on the revocation of Debtor's **bonding and on the amount of unpaid payroll liability owed by Debtor**.

(emphasis added). Aside from the fact the first sentence appears somewhat disingenuous when placed in juxtaposition with the letter giving Ms. Straight notice of the Department's intent to decertify, this admission is critical because both the "bonding" and "payroll" liability were directly related to the operation of her business. We believe it

thus clear that the proofs of claim filed by the State and the motion filed by Ms. Straight arose out of the same transaction or occurrence--the Debtor's business.

We conclude, then, the action initiated by the Debtor properly falls under § 106(b). The only unanswered question is whether that section has been vitiated by the Court's holding in *Seminole Tribe*.  This is a matter upon which courts have not agreed.

## V.

As already noted by the district court, *In re Straight,* 209 B.R. at 555-56, a number of courts have held § 106(b) is unaffected by *Seminole Tribe.*[2]  There are others, however, who disagree.  Most notable is *In re Creative Goldsmiths*, 119 F.3d 1140 (4th Cir. 1997), in which the Fourth Circuit holds, in keeping with *Seminole Tribe,* 11 U.S.C. § 106(a) offends the Eleventh Amendment.  In passing, the court also states that § 106(b) is similarly afflicted.  *Id.* at 1147.  We do not find that statement persuasive.

First, it is really dictum.  The underlying action was one in which the bankruptcy trustee filed a preference action against the state for refund of income taxes paid prior to bankruptcy.  Although the state had filed claims for other taxes owed by the debtor, the trustee never asserted the income tax payment he sought to recover was kin in any way to those claims.  Therefore, the court held, those claims and the trustee's complaint against the state did not arise from the same transaction or occurrence.  *Id.* at 1149.  Because the

---

[2]*See, e.g., **In re Charter Oak Assocs.**, 203 B.R. 17, 21-22 (Bankr. D. Conn. 1996); **In re Lazar**, 200 B.R. 358, 377 (Bankr. C.D. Cal. 1996).

statutory predicate was unsatisfied, § 106(b) could not be urged, and the issue of its constitutionality was really not before the court. There is an even stronger reason for disagreement with the Fourth Circuit's view of this question, however.

We see a significant difference between the universal abrogation of immunity provided in § 106(a) and the narrow waiver established in § 106(b). The principal teaching of *Seminole Tribe* is that Congress cannot **abrogate** Eleventh Amendment immunity without an "unmistakably clear intent to abrogate" and the "valid exercise of power." *Seminole Tribe*, 517 U.S. at 57-58. But § 106(b) does not pretend to **abrogate** a state's immunity, it merely codifies an existing equitable circumstance under which a state can choose to preserve its immunity by not participating in a bankruptcy proceeding or to partially waive that immunity by filing a claim. The choice is left to the state. Thus, § 106(b) follows the lead already established by the Supreme Court in *Gardner v. New Jersey* .

It is noteworthy, then, that *Gardner* is neither discussed nor in any way affected in *Seminole Tribe*. The omission is significant because it underscores the ability of Congress to draw the equitable line across which the state has the option to cross. Unlike § 106(a) which purports to abolish sovereign immunity across the board, § 106(b) leaves the choice to the governmental unit. It can eschew bankruptcy relief and retain its immunity, or it can doff the protective cloak and join the ranks of creditors seeking the benefits from the debtor's estate. That choice is not constitutionally profound, and it is in

- 12 -

accord with one of the fundamental principles of bankruptcy. ***Dekalb County***, 1998 WL 138847, at \*2. *See also **New York v. Irving Trust Co.***, 288 U.S. 329, 333 (1933) ("If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements . . . otherwise . . . a fundamental purpose of [bankruptcy] would be frustrated.").

## CONCLUSION

Because the district court correctly held the State of Wyoming waived its Eleventh Amendment immunity by filing proofs of claim in this case, its judgment is **AFFIRMED** on that ground alone. Appellant's motion to strike the supplemental authority of the amicus is **GRANTED**.