**In re Jimmy Allen DOIEL, Debtor.**

**United States of America, Appellant,**

v.

**State of Nebraska, Department of Revenue, Appellee.**

**No. Civ. 97–4147.**

United States District Court,
D. South Dakota,
Southern Division.

Sept. 30, 1998.

Craig P. Gaumer, U.S. Attorney's Office, Sioux Falls, SD, for appellant.

Scott M. Perrenoud, Cadwell, Sanford, Deibert & Garry, Sioux Falls, SD, Jim Woodruff, Lincoln, NE, for appellee.

David O. Carter, Sioux Falls, SD, for interested party Jimmy Allen Doiel.

Rick A. Yarnall, Sioux Falls, SD, for interested party, Rick A. Yarnall, Trustee.

David D. Wiest, Attorney General's Office, Pierre, SD, for interested party, Mark W. Barnett, Attorney General.

U.S. Bankruptcy Clerk, Sioux Falls, SD, for interested party, U.S. Bankruptcy Clerk.

Hon. Irvin N. Hoyt, U.S. Bankruptcy Court, Pierre, SD, for interested party, Irvin N. Hoyt.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

### Introduction

This is an appeal from Bankruptcy Court in which this Court must consider the constitutionality of 11 U.S.C. § 106(a), a provision that purportedly abrogates the immunity of the States in certain situations arising in the bankruptcy process. For the following reasons, the Court concludes that section 11 U.S.C. § 106(a) was not passed pursuant to a valid exercise of Congress' constitutional power; and therefore, the provision is unconstitutional.

### Background

This is an adversarial proceeding initially brought in bankruptcy court by the Debtor, Jimmy Allen Doiel, against the Appellee, State of Nebraska. The Debtor filed for Chapter 7 Bankruptcy in the District of South Dakota on June 29, 1995. In the schedules to his bankruptcy petition, the Debtor listed and scheduled debt to the State of Nebraska for state income taxes for the years 1984–1989 in the amount of $20,573. The complaint alleges that the State of Nebraska has failed to recognize the taxes owed as dischargeable under 11 U.S.C. § 523(a)(1)(B)(i). Further, the State of Ne-

braska has a levy on the Debtor's wages to collect the debt which has purportedly been discharged. The Debtor claims that these tax amounts are dischargeable and are not an exception to discharge under section 523 and seeks a judgment finding that the obligations owed to the state are dischargeable in bankruptcy, a return of the money collected by the State since the bankruptcy discharge, and an order restraining the Appellee from continuing to enforce and levy upon his income until the questions of the dischargeability were determined by the Court. See Complaint at 2.

In response, the State of Nebraska filed a motion to dismiss the complaint arguing that the court lacked subject matter jurisdiction to hear the claim because Nebraska has not consented to be subject to suits of this kind in federal court. Specifically, Nebraska had not waived the State's sovereign immunity to suit by private litigants under the Eleventh Amendment as the state has not filed a claim in the Debtor's bankruptcy proceedings nor participated in the bankruptcy. The State alleges that to the extent that the Debtor's complaint relies for subject matter jurisdiction upon Congress' purported abrogation of states' sovereign immunity in bankruptcy

cases through enactment of 11 U.S.C. § 106(a) as amended by the Bankruptcy Reform Act of 1994, the State asserts that such attempted abrogation exceeds the power of Congress under the United States Constitution and so adds nothing to the jurisdiction of this Court over such cases.

■ In the proceedings below, the Bankruptcy Court agreed with Nebraska's position and dismissed the case relying upon Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) and adopting the reasoning of Koehler v. Iowa College Student Aid Commission (In re Koehler), 204 B.R. 210 (Bankr.D.Minn. 1997). The United States has appealed this decision arguing that although Congress may lack the authority to abrogate the State's immunity from suit solely under Article I of the Constitution, Congress had the authority to do so under the Fourteenth Amendment. Consequently, the only issue the Court must address in this appeal is whether Congress exceeded its authority when it passed 11 U.S.C. § 106(a) abrogating the States' sovereign immunity under the Eleventh Amendment.[1]

---

1. The Government has filed supplemental papers in which it argues that this is not a suit within the meaning of the Eleventh Amendment or alternatively, that even if it is a suit, the federal courts have jurisdiction over the property at issue in this case on the basis of in rem jurisdiction. Addressing the latter argument first, the claim that the Bankruptcy Court can exercise in rem jurisdiction in this instance is without merit. See United States v. Nordic Village, Inc., 503 U.S. 30, 38, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) ("[W]e have never applied an in rem exception to the sovereign-immunity bar against monetary recovery, and have suggested no such exception exists...."); see also French v. Georgia Dept. of Revenue (In re ABEPP Acquisition Corp.), 215 B.R. 513 (6th Cir. BAP 1997). Additionally in this instance the Debtor did not invoke in rem jurisdiction. Nordic at 38, 112 S.Ct. 1011.

Returning now to the question of whether this case constitutes a suit under the Eleventh Amendment, the Government argues that since "[i]n this case, Plaintiff Doiel asked the Bankruptcy Court to determine whether the debts it owed the State of Nebraska were dischargeable, which is not a 'suit' for a money judgment within the meaning of the Eleventh Amendment. The injunctive relief requested is likewise not a 'suit' as the term was understood, but within the equitable powers of the Bankruptcy Court." Gaumer

Letter Dated August 17, 1998 (internal citations omitted). To begin, the complaint filed by the Debtor requests far more than a determination of whether the debts owed to the Appellee were dischargeable. The Debtor specifically "requests that the Court herein enter a judgment finding that the obligations to the Defendant are dischargeable in bankruptcy. Plaintiff further requests return of monies levied on by Defendant from Plaintiff since the bankruptcy discharge. Plaintiff further requests this Court to issue an order restraining this Defendant from continuing to enforce and levy upon his income until the questions of the dischargeability of the debts to the Defendant in this matter is determined by this Court." Complaint at 2. The Eleventh Amendment to the Constitution prohibits suits "in law or equity" brought in federal court against a State by individual citizens. U.S. Const. Amend. XI. Further, in Seminole the Supreme Court reiterated the principal that "the type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity." Id., 517 U.S. 44, 116 S.Ct. at 1124. "The Eleventh Amendment does not exist solely in order to 'preven[t] federal court judgments that must be paid out of a State's treasury,' Hess v. Port Authority Trans–Hudson Corp., 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994); it also serves to avoid 'the indignity of subjecting a

## Discussion

Article I, § 8 of the Constitution states in relevant part:

The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States....

U.S. Cont., Bankruptcy Clause, Art. I, § 8.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Cont. amend. XI.

In full, 11 U.S.C. § 106 states:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 263, 264, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process of judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such an order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim

state to the coercive process of judicial tribunals at the insistance of private parties,' *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy Inc.* 506 U.S. 139 at 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (internal quotation marks omitted)." *Seminole,* 517 U.S. 44, 116 S.Ct. at 1124 (internal citations modified).

Further, this is an adversary proceeding brought by the Debtor against the State of Nebraska; thus, this case is quite different than the case cited by the Government, *In re Barrett Refining Corporation,* 221 B.R. 795 (Bankr.W.D.Okla. 1998), wherein the court concluded that a non-adversarial bankruptcy proceeding in which a state voluntarily participated was not a suit under the Eleventh Amendment. *See id.* at n. 10 (distinguishing between a bankruptcy case and an adversary proceeding within a bankruptcy case); *cf. Smith v. Psychiatric Hospitals of Florida, Inc. (In re Psychiatric Hospitals of Florida, Inc.),* 216 B.R. 660 (M.D.Fla.1998) (where plaintiff does not seek any remedy from the State and requires no action from the State whatsoever, action is not a suit under the Eleventh Amendment); *see also Mitchell v. California Franchise Tax Board (In re Mitchell),* 222 B.R. 877 (9th Cir. BAP 1998) (core proceeding brought by plaintiff against the State in which court would have to determine the dischargeability of a particular debt, constituted a suit under the Eleventh Amendment). Accordingly, the Court concludes that the Government's argument that this is not a suit under the Eleventh Amendment is without merit.

against such governmental unit that is property of the estate.

11 U.S.C. § 106.

Relying on the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), a significant number of Courts have already held that Congress was beyond its constitutional authority when it sought to abrogate the States' immunity under the Eleventh Amendment with the passage of section 106(a) of the Bankruptcy Code. *See, e.g., Sacred Heart Hosp. of Norristown v. Commonwealth of Pennsylvania, Dept. Of Public Welfare (In re Sacred Heart Hosp. of Norristown)*, 133 F.3d 237, 244 (3d Cir.1998) (Congress may not abrogate States' sovereign immunity pursuant to the Bankruptcy Clause, bankruptcy is not a "privilege or immunity" under section 1 of the Fourteenth Amendment); *Department of Transportation v. PNL Asset Management Co., LLC (In re Estate of Fernandez)*, 123 F.3d 241 (5th Cir.1997) (Congress cannot abrogate States' sovereign immunity under the Bankruptcy Clause. "To cede to Congress the power to pass general, substantive legislation which abrogates state sovereign immunity, pursuant to the Enforcement Clause, would render Eleventh Amendment state sovereign immunity meaningless and eviscerate the fundamental construct of federalism in our constitutional form of government.") *Id.* at 245 (citing *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 2164–66, 138 L.Ed.2d 624 (1997)); *Schlossberg v. State of Maryland (In re Creative Goldsmiths, Inc.)*, 119 F.3d 1140, 1146–47 (4th Cir.1997) ("If the Fourteenth Amendment is held to apply so broadly as to justify Congress' enactment of the Bankruptcy Code as a requirement of due process, then the same argument would justify every federal enforcement scheme as a requirement of due process under the Fourteenth Amendment."); *Schmitt v. Missouri Western State College (In re Schmitt)*, 220 B.R. 68 (Bankr.W.D.Mo.1998) (complaint dismissed based upon state's sovereign immunity, but noting that the Supreme Court's interpretation of the Eleventh Amendment allows a debtor to bring an action for injunctive relief against an appropriate state official pursuant to the doctrine of *Ex Parte Young.*); *Koehler v. Iowa College Student Aid Commission (In re Koehler)*, 204 B.R. 210 (Bankr.D.Minn.1997) (Under *Seminole*, Congress cannot abrogate states sovereign immunity by exercising power under Article I of the Constitution.). As a result, an examination of *Seminole* is necessary.

In *Seminole*, at issue was whether Congress had the power to abrogate the States' sovereign immunity pursuant to Congressional authority under the Indian Commerce Clause in Article I of the Constitution when it enacted the Indian Gaming Regulatory Act. In its decision, the Supreme Court reaffirmed the rule that in order for Congress to effectively abrogate the States' sovereign immunity it must expressly state its intention to abrogate, and it must act pursuant to a Constitutional provision allowing it to do so. *Id.*, 517 U.S. 44, 116 S.Ct. at 1123.[2] The Court concluded that although Congress had expressly stated its intent to abrogate the States' immunity when it passed the Indian Gaming Regulatory Act, Congress was without authority to abrogate the States' sovereign immunity when enacting legislation pursuant to Article I of the Constitution.[3] Specifically, the Court stated:

> [T]oday, we reconfirm that the background principle of state sovereign immunity embodied in the Eleventh Amendment is not

---

**2.** In two decisions, one in 1989 and the other in 1992, the Supreme Court held that the then applicable Bankruptcy Code did not effectively abrogate sovereign immunity of the States or the United States because Congress had failed to expressly state its intent to abrogate. *United States v. Nordic Village*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (United States); *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (States). Congress then passed the current form of section 106 in 1994 in which it

clearly and explicitly states Congressional intent to abrogate the States' sovereign immunity. *See* 11 U.S.C. § 106(a). Accordingly, whether Congress intended to abrogate the States' sovereign immunity is not at issue in this proceeding. Under consideration is only whether Congress has the authority to do so in this instance.

**3.** Whether Congress could have acted pursuant to the Fourteenth Amendment was not before the Court. *Seminole*, 517 U.S. 44, 116 S.Ct. at 1125.

so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole*, 517 U.S. 44, 116 S.Ct. at 1131–32. The Court rejected the Tribe's argument "that the abrogation power is necessary 'to protect the tribes from state action denying federally guaranteed rights.'" *Seminole*, 517 U.S. 44, 116 S.Ct. at 1125–26 (quoting Brief for Petitioner at 20).

In his dissent, Justice Stevens specifically recognized the impact the Court's decision would have in the area of bankruptcy:

> The majority's opinion does not simply preclude Congress from establishing the rather curious statutory scheme under which Indian tribes may seek the aid of a federal court to secure a State's good faith negotiations over gaming regulations. Rather, it prevents Congress from providing a federal forum for a broad range of actions against States, from those sounding in copyright and patent law, to those concerning bankruptcy, environmental law, and the regulations of our vast national economy.

*Seminole*, 517 U.S. 44, 116 S.Ct. at 1134 (Stevens J. dissenting); *see also id.*, 517 U.S. 44, 116 S.Ct. at 1134 n. 1.

The Seminole majority responded to Justice Stevens' comment in a footnote by stating:

> Justice Stevens understands our opinion to prohibit federal jurisdiction over suits to enforce the bankruptcy, copyright, and antitrust laws against the States. He notes that federal jurisdiction over those statutory schemes is exclusive, and therefore concludes that there is "no remedy" for state violations of those federal statutes. *Seminole*, 517 U.S. 44, 116 S.Ct. at 1145 n. 1.

That conclusion is exaggerated both in its substance and in its significance. First, Justice Stevens' statement is misleadingly overbroad. We have already seen that several avenues remain open for ensuring state compliance with federal law. See supra, at n. 13. Most notably, an individual may obtain injunctive relief under *Ex Parte Young* in order to remedy a state officer's ongoing violation of federal law. See supra, at n. 14. Second, contrary to the implication of Justice Stevens' conclusion, it has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes; in the decision of this Court that Justice Stevens cited (and somehow labels "incompatible" with our decision here), we specifically reserved the question whether the Eleventh Amendment would allow a suit to enforce the antitrust laws against a State. *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 n. 22, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Although the copyright and bankruptcy laws have existed practically since our nation's inception, and the antitrust laws have been in force for over a century, there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States.

*Seminole*, 517 U.S. 44, 116 S.Ct. at 1131–32 n. 16 (internal citations modified).

After *Seminole*, Congress only has the ability to abrogate the States' sovereign immunity when Congress acts pursuant to its authority under section 5 of the Fourteenth Amendment. *See Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir.1997). As noted above, under *Seminole*, the majority of courts to have considered whether section 106(a) effectively abrogated the States' sovereign immunity have concluded that Congress was without authority to abrogate the States' sovereign immunity under the Bankruptcy Clause. *See* supra. The Government tries to escape the same conclusion in this instance by arguing three bases for finding that Congress acted within its Constitutional

enforcement powers under the Fourteenth Amendment when it passed section 106.

First, the Government argues that Due Process requires that Congress abrogate the States' sovereign immunity under the Bankruptcy Code because, "Congress set in place a procedural device designed to provide due process to debtors and creditors alike and to make the bankruptcy process as streamlined as possible[,]" and "[t]he only way for Congress to guarantee that debtors had access to a judicial forum in which they could exercise their debt relief rights was to create one, and to require the States, when they have claims against a bankruptcy estate, to largely follow the same rules as all other creditors." Brief for Appellant at 15, 16. Second, the Government asserts that the Bankruptcy Code was designed "to ensure equality between the creditors," establishing an Equal Protection Clause purpose for the abrogation of the States' sovereign immunity. *Id.* at 16. Finally, the Government argues that Congress had the authority to enact section 106(a) in order to ensure that citizens have access to federal bankruptcy relief under the Privileges and Immunities Clause. *Id.* at 17.

■■■ Congress need not expressly invoke the authority of a specific constitutional provision to act pursuant to it. *Crawford v. Davis,* 109 F.3d 1281, 1283 (8th Cir.1997) (citing *EEOC v. Wyoming,* 460 U.S. 226, 243–44 n. 18, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983); *Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144, 68 S.Ct. 421, 92 L.Ed. 596 (1948)). Thus, the Court must "make an objective inquiry, namely whether Congress could have enacted the legislation at issue pursuant to a constitutional provision granting it the power to abrogate." *Crawford* at 1283. So long as Congress had such power as an objective matter, whether Congress specifically relied upon a particular constitutional provision is irrelevant. *Id.* For Congress to have properly acted under the Fourteenth Amendment, however, the legislation must be "regarded as serving a Fourteenth

Amendment purpose." *Raper v. State of Iowa,* 115 F.3d 623 (8th Cir.1997).[4]

The Fourteenth Amendment states in relevant part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens . of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

In regard to the Civil War amendments, the Supreme Court has held:

Whatever legislation is appropriate, that is, adapted to carry out the objects the amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion, if not prohibited, is brought within the domain of congressional power.

*Ex parte Virginia,* 100 U.S. 339, 346, 25 L.Ed. 676 (1879). And somewhat more recently, the Court refined the test for Section 5 legislation enacted to enforce the Equal Protection Clause to be whether a statute: [1] may be regarded as an enactment to enforce the Equal Protection Clause, [2] whether it is "plainly adapted to that end" and [3] whether it is not prohibited by but is consistent with "the letter and spirit of the constitution." *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966) (quoting *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819)).

These three factors, "cannot be kept so permissive as to make them collapse into the

4. In *Raper* the Eighth Circuit relied upon the Sixth Circuit's opinion in *Wilson–Jones v. Caviness,* 99 F.3d 203, 209–11 (6th Cir.1996), modified on other grounds, 107 F.3d 358 (6th Cir. 1997) (per curiam), for holding that the FLSA's overtime provision cannot be regarded as serving a Fourteenth Amendment purpose, and therefore, Congress was without authority to abrogate the State's sovereign immunity was the passage of this provision.

'rational related' test generally used for the enforcement clauses of other constitutional amendments" because "[t]he Fourteenth Amendment contains rather specific constitutional goals, such as the elimination of race discrimination by state actors, and also more general goals, such as the guarantee to every citizen of equal protection of the laws." *Wilson–Jones*, 99 F.3d at 209. Further, the Supreme Court recently reemphasized, "Congress' power under the Fourteenth Amendment extends only to enforc[ing] the provisions of the Fourteenth Amendment." *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). "Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by our case law." *Id.*, 521 U.S. 507, 117 S.Ct. at 2167.

### Due Process

◼ The flaw in the Government's Due Process argument is its assumption that a debtor has some sort of constitutionally protected right to access to the federal bankruptcy court. This is simply not the case. As the Supreme Court clearly stated in *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), a due process right of access to the courts exists when a fundamental interest is a stake and the Government has exclusive control over the legal relationships at issue. *Id.* In *Kras* at issue was whether filing fees required in order to file for a voluntary discharge in bankruptcy court violated the Due Process or Equal Protection rights of an indigent petitioner. The Supreme Court held that the ability to discharge one's debt in bankruptcy did not touch on a fundamental interest and further, that there are other avenues available for a debtor, no matter how unrealistic those may be in a particular situation, to dispose of his debt. *Id.* at 445–46, 93 S.Ct. 631. Therefore, there is no constitutional right to access to a court in the bankruptcy context. *Id.*[5]

### Equal Protection and Privileges and Immunities

◼ Similarly, the Court finds that the Government's second and third arguments, that the legislation should be upheld as enforcing the Equal Protection Clause or the Privileges and Immunities Clause must fail.

The Court has located a single case upholding legislation under the Fourteenth Amendment's enforcement clause that concerned discrimination by state actors on the basis something other than race, gender, age,

---

5. Specifically the Court stated:

The denial of access to the judicial forum in *Boddie [v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)] touched directly, as has been noted, on the marital relationship and on the associational interests that surround the establishment and dissolution of that relationship. On many occasions we have recognized the fundamental importance of these interests under our Constitution.... The *Boddie* appellants' inability to dissolve their marriage seriously impaired their freedom to pursue other protected associational activities. Kras' alleged interest in the elimination of his debt burden, and in obtaining his desired new start in life, although important and so recognized by the enactment of the Bankruptcy Act, does not rise to the same constitutional level. If Kras is not discharged in bankruptcy, his position will not be materially altered in any constitutional sense.

...

We are also of the opinion that the filing fee requirement does not deny Kras the equal protection of the laws. Bankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental and that demand the lofty requirement of a compelling governmental interest before they may be significantly regulated. Neither does it touch upon what have been said to be suspect criteria of race, nationality, or alienage. Instead, bankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard in measuring the propriety of Congress' classification, is that of rational justification.

There is no constitutional right to obtain a discharge of one's debts in bankruptcy. The Constitution, Art. I, section 8, cl. 4, merely authorizes the Congress to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States." ... [T]his obviously is a legislatively created benefit, not a constitutional one, and, ... it was a benefit withheld, save for three short periods, during the first 110 years of the Nation's life. The mere fact that Congress has delegated to the District Court supervision over the proceedings by which a petition for discharge is processed does not convert a statutory benefit into a constitutional right of access to a court. *Kras*, 409 U.S. 434, 93 S.Ct. at 637–39 (internal citations omitted).

or disability.[6] *Wheeling & Lake Erie Railway Co. v. Public Utility Commission of the Commonwealth of Pennsylvania,* 141 F.3d 88 (3d Cir.1998). In *Wheeling,* the Third Circuit held that Congress validly abrogated the States' sovereign immunity pursuant to the Fourteenth Amendment when it enacted provisions of the Railroad Revitalization and Regulatory Reform Act prohibiting state and local taxing authorities from imposing discriminatory taxes on railroads in violation of railroad's Equal Protection rights. The Third Circuit was able to distinguish its decision in *In re Sacred Heart* in which it held that Congress was without authority to abrogate the States' sovereign immunity when it passed 11 U.S.C. § 106(a) as follows:

> The legislative history of the statute before us shows Congress was aware that the railroads are easy prey for State and local tax assessors in that they are nonvoting, often nonresident, targets for local taxation, who cannot easily remove themselves from the locality.
>
> . . .
>
> In *Sacred Heart,* we did not distinguish between the Bankruptcy Clause and the Commerce Clause (both Article I powers) as being inappropriate sources of congressional power to abrogate states' Eleventh Amendment immunity. Further, we found no evidence suggesting that § 106(a) [of the Bankruptcy Code] was enacted pursuant to any constitutional provision other than Congress' Bankruptcy Clause power. Wheeling at 92–93, 94 (internal quotations omitted).

The legislative history accompanying the passage of the 1994 Amendments to the Bankruptcy Code which enacted the present day version of section 106(a) stated that the Bankruptcy Code is designed to achieve two purposes:

> The first is to provide honest debtors who have fallen on hard times the opportunity for a fresh start in life, after they have made a good-faith attempt to pay what they can.
>
> . . .
>
> The second objective of the bankruptcy system is to protect creditors in general by preventing an insolvent debtor from selectively paying off the claims of certain favored creditors at the expense of others. H.R.Rep. No. 103–835, at 32–33 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3341.

Citing similar language in Congress' 1978 legislative history, the Government argues that equal protection of the creditors requires that States be subject to suit in federal court under the Bankruptcy Code otherwise, creditors like Nebraska will resort to other methods of collecting their debts outside the Bankruptcy process. However, the very sort of occurrence that the Government warns against is precisely what the Supreme Court endorsed in *Kras.* That is, parties may resolve debts outside the federal bankruptcy court system. Given the foregoing discussion identifying that there is no constitutional right to discharging one's debts in bankruptcy, it seems contrary to then hold that there it is constitutionally required that all creditors be treated equally. In addition, although the Bankruptcy Clause requires uniformity in the Bankruptcy laws:

> [t]he uniformity requirement is not a straightjacket that forbids Congress to distinguish among classes of debtors, nor does it prohibit Congress from recognizing that state laws do not treat commercial transactions in a uniform manner. A bankruptcy law may be uniform and yet 'may recognized the laws of the State in certain particulars, although such recognition may lead to different results in different States.'

*Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 469, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982) (quoting *Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507

---

6. *See, e.g., Goshtasby v. Board of Trustees of the University of Illinois,* 141 F.3d 761 (7th Cir.1998) (ADEA is proper exercise of the 14th A. enforcement authority); *but see Kimel v. State of Florida Board of Regents,* 139 F.3d 1426 (11th Cir.1998) (no unequivocal expression of legislative intent to abrogate States' sovereign immunity in the ADEA; ADA was properly enacted under Congress' Fourteenth Amendment enforcement powers); *see also Wilson–Jones* at 210 ("Each case we could locate where legislation was upheld under the Fourteenth Amendment's enforcement clause concerned discrimination by state actors on the basis of race or gender.").

(1918)). Thus, "[t]he uniformity requirement of the Bankruptcy Clause is not an Equal Protection Clause for bankrupts." *Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 471 n. 11, 102 S.Ct. 1169, 71 L.Ed.2d 335.

A recent Eighth Circuit decision further illustrates the inelasticity of Congress' authority to abrogate the States' sovereign immunity pursuant to the Equal Protection Clause. *Humenansky v. Regents of the University of Minnesota,* 152 F.3d 822 (8th Cir. 1998). In *Humenansky,* the Eighth Circuit held that Congress neither intended to abrogate the States' Eleventh Amendment immunity nor had the power to act under § 5 of the Fourteenth Amendment when it extended the Age Discrimination in Employment Act (ADEA) to cover public employees. *Id.*

The United States defended the legislation on appeal. The Government argued that since the ADEA prohibits invidious discrimination on account of age, it is plainly adapted to enforcing the Equal Protection Clause and that in enforcing the Fourteenth Amendment, Congress is not limited to prohibiting what the courts have declared unconstitutional under the Equal Protection Clause. *Id.* at 826. The Eighth Circuit rejected the Government's arguments relying heavily on the *City of Boerne,* 521 U.S. 507, 117 S.Ct. at 2164 (Congress exceeded its authority under Fourteenth Amendment when it passed the Religious Freedom Restoration Act of 1993), wherein the Supreme Court stated:

> Congress' power under § 5, however, extends only to "enforcing" the provisions of the Fourteenth Amendment. The Court has described this power as "remedial." The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States. Legislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the Clause. Congress does not enforce a constitutional right by changing what the right is. It has been given the power "to enforce," not the power to determine what constitutes a constitutional violation.

*Humenansky* at 828 (quoting *City of Boerne,* 521 U.S. 507, 117 S.Ct. at 2164 (internal citations omitted)). Likewise, Congress lacked the power under the Equal Protection Clause to abrogate the States' Eleventh Amendment Immunity to protect creditors or debtors.

Additionally, "the Privileges and Immunities Clause of the Fourteenth Amendment 'has remained essentially moribund' since the Supreme Court's decision in *The Slaughter–House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872), and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights." *In re Sacred Heart* at 244. Most significantly, as stated above, the Supreme Court has expressly held that there is no constitutional right to a bankruptcy discharge. *United States v. Kras,* 409 U.S. 434, 446–47, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Therefore, the Court holds that section 106(a) of the Bankruptcy Code could not be passed pursuant to the Privileges and Immunities Clause to enforce some supposed right of citizenship in bankruptcy.

There are only three cases cited by the Government and located by the Court that found that Congress acted within its authority in abrogating the States' sovereign immunity when it passed section 106(a): *Mather v. Oklahoma Employment Security Commission (In re Southern Star Foods, Inc.),* 190 B.R. 419 (Bankr.E.D.Okla.1995) (decided prior to the Supreme Court's decision in *Seminole*); *Headrick v. Georgia (In re Headrick),* 200 B.R. 963 (Bankr.S.D.Ga.1996) aff'd on other grounds, 146 F.3d 1313 (11th Cir.1998); *Wyoming Dept. of Transportation v. Straight (In re Straight),* 209 B.R. 540 (D.Wyo.1997) aff'd on other grounds, 143 F.3d 1387 (10th Cir.1998).

The first case, *In re Southern Star Foods,* was decided *prior* to the Supreme Court's decision in *Seminole. Star Foods* held that Article I gives Congress the power to legislate on the subject of bankruptcy and that the Fourteenth Amendment allows debtors to enforce the provisions of the Bankruptcy Code in federal court notwithstanding the States' Eleventh Amendment sovereign immunity. *Id.* The *Star Foods* court conclud-

ed that "[a]lthough such laws are enacted 'pursuant to Article I,' they are enforceable 'through the Fourteenth Amendment.'" *Id.* at 426 (citations omitted in the original). The court grounded its holding in the conclusion that:

> The Bankruptcy Code is intended to provide all American citizens with the following: the privilege of efficient liquidation or other use and ratable distribution of a debtor's assets, or (to put it another way) with immunity from the inefficient liquidation or use and inequitable distribution of a debtor's assets which may obtain under State laws; the privilege of discharge, or (to put another way) with immunity from oppressive debt collection which may obtain under State laws; liberty from economic bondage, and protection against undue loss of value of property in exigent financial circumstances; and fair and efficient determination of all of the above, according to the process due in a national court of equitable jurisdiction, without regard to person or to any special privileges save those considered by Congress to be justified as a matter of policy.

*Id.* Accordingly, the court found that the Bankruptcy Code implicated the rights protected by the Fourteenth Amendment. The foregoing discussion, however, demonstrates that this conclusion is contrary to the Supreme Court holdings in *City of Boerne*, *Seminole*, and *Kras*. Indeed the Supreme Court rejected the Seminole Tribe's argument that rights created pursuant to Article I must be enforced against the states despite Eleventh Amendment immunity as follows: "Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction," *Seminole*, 517 U.S. 44, 116 S.Ct. at 1132. Therefore, it is unlikely that the Supreme Court would accept the reasoning of the *Star Foods* court.

Despite the Supreme Court's holding in *Seminole*, both the *Headrick* and *Straight* courts relied upon and adopted the reasoning of *Star Foods*. Both *Headrick* and *Straight* have since been affirmed on appeal; however, both the Eleventh and Tenth Circuits concluded that in each instance the relevant State had taken some action to waive its

sovereign immunity. *See Headrick*, 146 F.3d 1313 (11th Cir.1998); *Straight*, 143 F.3d 1387 (10th Cir.1998). Therefore, the courts declined to address whether section 106(a) violates the Eleventh Amendment. *Headrick* at 1317; *Straight* at 1389.

## Conclusion

Based upon the foregoing analysis, it is the conclusion of this Court that 11 U.S.C. § 106(a) is unconstitutional insofar as it purports to abrogate the States' sovereign immunity under the Eleventh Amendment of the Constitution. Accordingly,

IT IS ORDERED:

that the decision of the Bankruptcy Court is affirmed.