In re The ELI WITT COMPANY,
Debtor.

The Eli Witt Company, Plaintiff,

v.

The State of Florida, Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco, Defendant.

Bankruptcy No. 96–15441–8P1.
Adversary No. 98–174.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 27, 1999.

Robert A. Soriano, Tampa, FL, for plaintiff.

Eric H. Miller, Tallahassee, FL, Scott R. Fransen, Tallahassee, FL, for defendant.

John Emmanuel, Tampa, FL, for American Home Assurance Company.

Robert A. Schatzman, Miami, FL, Stuart Hertzberg, Detroit, Michigan, for Creditors Committee.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 28)

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for consideration in Plaintiff, The Eli Witt Company's (Debtor) confirmed Chapter 11 case upon the Debtor's Motion for Summary Judgment. The Debtor seeks interest on the amount it overpaid to the Defendant, the State of Florida, Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco (Division), on a claim the Division made in the Debtor's bankruptcy case. The parties agree that the facts are undisputed; therefore, the issue regarding the interest on the over-payment of $1,526,365.84 is ripe for determination as a matter of law.

On November 12, 1996, the Debtor filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. The Division filed several proofs of claim totaling $13,360,928.31 for pre-petition cigarette taxes. Between January and May of 1997, the Debtor filed several Applications for Refund or Credit with the Division concerning the Defendant's cigarette tax claims.

The Debtor obtained surety bonds through American Home Assurance Company (AIG) guaranteeing payment of the cigarette taxes to the Division. On March 20, 1997, AIG paid the Division $6,000,000 under these surety bonds as partial payment of the Debtor's cigarette taxes. On August 15, 1997, the Division filed suit against AIG for the balance of the cigarette taxes due from the Debtor.

On December 23, 1997, the Debtor's Reorganization Plan was confirmed by this Court. On January 23, 1998, pursuant to its Reorganization Plan, the Debtor paid the Division $7,376,287.35 which represented the balance of the Division's claims for cigarette taxes. In February of 1998, the Division notified the Debtor that it had overpaid the Division by $1,526,365.84 on the cigarette tax claims and that a refund of this overpayment would be made by the Division.

On February 9, 1998, AIG claimed the right to a refund of the over-payment in a letter to the Division. (Exhibit A to the Debtor's Motion for Summary Judgment, Docket No. 28.) On February 25, 1998, the Debtor also demanded a refund of the over-payment. (Exhibit B to the Debtor's Motion for Summary Judgment, Docket No. 28.) On February 26, 1998, due to the conflicting claims of AIG and the Debtor for the refund of the admitted over-payment on the Division's claim, the Division filed an Interpleader in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida. On March 11, 1998, the Circuit Court authorized the Division to deposit the amount of the over-payment with the Clerk of the Circuit Court and provided that the Clerk should deposit the funds in an interest bearing account. (Exhibit C to the Debtor's Motion for Summary Judgment, Docket No. 28.) However, the Division did not make the authorized deposit with the Clerk of the Circuit Court. In April of 1998, the Circuit Court once again authorized the Division to deposit the amount of the refund with the Clerk of the Circuit Court or a financial institution provided that the deposit was in an interest bearing account. (Exhibit C to the Debtor's Motion for Summary Judgment, Docket No. 28.) Once again, the Division did not deposit the amount of the over-payment in an interest bearing account.

On April 1, 1998, the Debtor brought Adversary Proceeding number 98–174 against the Division in this Court seeking recovery of the over-payment and interest on the amount of the over-payment until the time that the Division refunded it to the Debtor. (Docket No. 1.) On April 30, 1998, the Division answered the Debtor's

Complaint and raised the affirmative defense of sovereign immunity. (Docket No. 3.)

Although the Debtor had filed several Applications for refund or credit regarding these taxes with the Division prior to the Confirmation of the Debtor's Reorganization Plan, the question of whether the Division or the Debtor should have acted on or acted to ensure that these claims were adjusted to reflect the correct amount prior to Confirmation of the Debtor's Reorganization Plan is irrelevant. The question is whether the Division may be charged interest on the amount of the over-payment which the Division held in its possession from January of 1998 until the settlement with AIG and the Debtor was reached in May of 1999 and the Division refunded the amount of the over-payment to the Debtor on May 24, 1999.

■ The Division argues that a claim for interest on the over-payment is barred by the doctrine of sovereign immunity. As a general proposition, the longstanding English common law doctrine of sovereign immunity as well as the Eleventh Amendment bars individuals from suing the States. In two recent cases, the Supreme Court of the United States held that Congress does not have the power under Article I of the United States Constitution to abrogate the States' sovereign immunity. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). However, a State may waive its sovereign immunity by consent or by legislative act pursuant to the State's constitution. *Id.*

States routinely file proofs of claim in bankruptcy cases and often these claims are substantial, as in the instant case. It cannot be gainsaid that the power to allow or disallow claims in a bankruptcy case is a "core" procedure under 28 U.S.C. § 157(b)(2)(B). Concomitant with this power is the power of the bankruptcy court to determine the amount of all claims ultimately allowable in a given bankruptcy case. If the bankruptcy court did not have the power to rule on claims made by parties in interest, including claims filed by States, then the efficiency of the bankruptcy system would be seriously impaired, and all debtors and creditors, including States, would incur significantly greater costs in bankruptcy by either forcing litigation of the allowance of some claims in different forums or, as in the instant case, the Debtor would experience a loss because it would be left powerless to challenge the validity of a State's claim due to the doctrine of sovereign immunity.

■ By filing a proof of claim in a bankruptcy case, the courts have uniformly held that a State has submitted to the jurisdiction of the bankruptcy court at least in regard to that claim. *See e.g., In re Straight,* 209 B.R. 540, 555 (D.Wyo. 1997), judgment aff'd, 143 F.3d 1387, 1388–89, cert. denied, ―― U.S. ――, 119 S.Ct. 446, 142 L.Ed.2d 400 (1998). Some courts have found that the submission of a claim by a State in a bankruptcy case is a waiver of the State's sovereign immunity and a waiver of the State's protection under the Eleventh Amendment. *Id.* Other courts have held that when a State files a proof of claim in a bankruptcy proceeding, the bankruptcy court has in rem jurisdiction with respect to the State's claim. *See e.g., State of Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 787 (4th Cir.1997). The court in *In re Mitchell,* held that in rem jurisdiction could be exercised over a State's claim to enable a discharged debtor to assert its discharge order as an affirmative defense to a State's collection claim, for an adjudication of dischargeability if the State itself filed an adversary proceeding which would thereby give rise to a constructive waiver, or to allow the issuance of an order confirming a chapter 11 plan if the State did not object to the confirmation plan. *In re Mitchell,* 222 B.R. 877, 883 (9th Cir. BAP 1998).

The allowance of the Division's claim and the Debtor's right to a refund of the

over-payment are without dispute or controversy. However, what is disputed is the Debtor's claim to interest on the refund of the over-payment which was withheld by the Division for 15 months. The Division contends that the Debtor's claim for interest on the refund of the over-payment is a freestanding claim that is separate and apart from the refund; therefore, the Division contends the Debtor's claim for interest is barred by sovereign immunity. However, the dispute regarding interest on the refund of the over-payment is so obviously intertwined with the Division's claim in the Debtor's bankruptcy case that it is in fact indisputably part of the claim. Clearly, but for the overpayment there would not be an issue concerning interest on the refund, and as previously discussed, the Division waived its sovereign immunity when it filed a claim in the Debtor's bankruptcy case. For the foregoing reasons, this Court rejects the Division's argument that the Debtor's claim for interest is barred by the affirmative defense of sovereign immunity as specious.

■ Furthermore, it is clear under 11 U.S.C. § 106(b) that a governmental unit that files a claim in a bankruptcy case waives its sovereign immunity with respect to that claim and any claim against such governmental unit that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose. The court considered an argument by the IRS that sovereign immunity barred the recovery of an excess distribution by the bankruptcy Trustee in *In re R & W Enterprises*, 181 B.R. 624, 637 (Bkrtcy.N.D.Fla.1994). The court in *In re R & W Enterprises* held that the IRS waived its protection of sovereign immunity by filing a claim against the Debtor in bankruptcy. *Id.* at 637–645.

■ As a result of the Division's withholding of the refund of the over-payment for fifteen months, the value of the refund of the over-payment to the Debtor clearly has diminished due to inflation and the Debtor has experienced a loss of the earning power of its property for fifteen months. In order to compensate the Debtor for wrongfully withholding the over-payment, the Division should pay the Debtor interest at the Federal rate of 4.966 percent compounded annually from the date that the Circuit Court authorized the Division to deposit the refund with the Clerk of the Circuit Court on March 11, 1998 until the Division made the refund as approved under the Settlement Order on May 24, 1999.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion for Summary Judgment is hereby granted. It is further

ORDERED, ADJUDGED AND DECREED that the Division will pay the Debtor interest in the amount of $91,-930.02 computed at the Federal rate of 4.966 percent compounded annually on the amount of the refund of the over-payment of $1,526,365.84 from the date that the Circuit Court authorized the Division to deposit the refund with the Clerk of the Circuit Court on March 11, 1998 until the Division made the refund as approved under the Settlement Order on May 24, 1999.