In re YORK–HANNOVER DEVELOPMENTS, INC., Debtor.

Richard D. SPARKMAN, Trustee, Plaintiff,

v.

STATE OF FLORIDA DEPT. OF REVENUE, Defendant.

Bankruptcy No. 92–01424–5–ATS. Adv. No. S–94–00145–5–AP.

United States Bankruptcy Court, E.D. North Carolina.

April 18, 1995.

Peter J. Marino, Special Counsel to Trustee, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., Raleigh, NC.

R.A. Renfer, Jr., Asst. U.S. Atty., Chief, Civ. Div., Raleigh, NC.

Kent L. Weissinger, Asst. Gen. Counsel, Florida Dept. of Revenue, Tallahassee, FL.

Rosalie K. Murphy Atty., Civ. Div., Dept. of Justice, Washington, DC.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

A. THOMAS SMALL, Chief Judge.

The matter before the court in this adversary proceeding is the motion to dismiss filed by the defendant, the State of Florida Department of Revenue (DOR). The plaintiff, Richard D. Sparkman, is the chapter 7 trustee of the debtor, York–Hannover Developments, Inc. (YHDI). Mr. Sparkman brought this adversary proceeding to recover three prepetition payments that the debtor made to DOR and that Mr. Sparkman contends are avoidable as fraudulent transfers under 11 U.S.C. § 548 or § 544 [1] and applicable North Carolina law. On this motion to dismiss, the sole issue is whether § 106(a), as amended by the Bankruptcy Reform Act of 1994 is constitutional. A hearing was held in Raleigh, North Carolina on February 22, 1995. Subsequently, the existence of the constitutional challenge was certified to the Attorney General of the United States pursuant to the requirements of 28 U.S.C. § 2403(a). The United States has intervened and filed a memorandum in support of the constitutionality of § 106(a) as amended. For the reasons discussed below, the motion to dismiss is denied.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. sections 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(H) which this court may hear and determine.

Section 106(a) of the Bankruptcy Code, as amended by the Bankruptcy Reform Act of 1994, specifically provides that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections ... 544, [and] 548." 11 U.S.C. § 106(a). Subsection (2) of § 106(a) provides that the court may hear and determine any issue arising under the sections named in subsection (1). 11 U.S.C. § 106(a)(2). Finally, subsections (3) and (4) of § 106(a) supply statutory authority for the bankruptcy court to issue an enforceable money judgment against governmental units in any of the actions set forth in subsection (1). 11 U.S.C. §§ 106(a)(3) and (4). Moreover, § 702(b)(2)(B) of the Bankruptcy Reform Act of 1994 mandates that § 113 of the Reform Act, codified as 11 U.S.C. § 106(a), shall apply retroactively to bankruptcy cases commenced prior to the enactment of the Reform Act.[2] Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 at § 702, 108 Stat. at 4150.

DOR has not actively participated in YHDI's bankruptcy case and vehemently opposes the bankruptcy court's jurisdiction. Thus, the Eleventh Amendment/sovereign immunity issue presented here is clearly one

---

1. Hereafter, all sections referred to in the text are those in Title 11 of the United States Code unless otherwise designated.

2. The retroactive application of § 106(a) is not contested here.

of congressional abrogation, rather than waiver or consent. In *Hoffman v. Connecticut Department of Income Maintenance*, the United States Supreme Court said: "As we have repeatedly stated, to abrogate the States' Eleventh Amendment immunity from suit in federal court, ... Congress must make its intention 'unmistakably clear in the language of the statute.'" 492 U.S. 96, 101, 109 S.Ct. 2818, 2822, 106 L.Ed.2d 76 (1989) (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). Applying this test to the language of amended § 106(a), there is no doubt that Congress made its intention unmistakably clear. Indeed, the legislative history to amended § 106 states: "As suggested by the Supreme Court, section 106(a)(1) specifically lists those sections of title 11 with respect to which sovereign immunity is abrogated." 140 Cong.Rec. H10766 (daily ed. Oct. 4, 1994) (statement of Rep. Brooks).

Although DOR concedes that § 106(a) as amended is an "unmistakably clear" statement of Congress' intent to abrogate sovereign immunity, DOR contends that § 106(a) is unconstitutional because Congress lacked sufficient power under the Bankruptcy Clause to enact law that abrogates the Eleventh Amendment. Thus, the issue is a narrow one of first impression for this court, and one that has never been directly addressed by the Supreme Court: May Congress constitutionally abrogate States' Eleventh Amendment immunity when acting pursuant to its powers under the Bankruptcy Clause?

To date the United States Supreme Court has decided only two cases that specifically addressed the adequacy of the constitutional power under which Congress may enact law in abrogation of the Eleventh Amendment.

In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court held that Congress may create a cause of action for money damages enforceable against an unconsenting state when it acts pursuant to its powers under § 5 of the Fourteenth Amendment. In *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), a plurality held that Congress also has the power to abrogate Eleventh Amendment sovereign immunity when acting under its plenary Commerce Clause power.

■ DOR advances two arguments in support of its constitutional challenge. First, DOR asserts that *Union Gas* was wrongly decided and would be decided to the contrary by today's Supreme Court.[3] At the hearing on this motion to dismiss, DOR offered a scholarly dissection of the plurality, concurring and dissenting opinions in *Union Gas* to support this contention. However, even if the court were to agree with DOR that *Union Gas* would be decided differently today, the fact remains that *Union Gas* is still the law and is binding authority upon this court. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

DOR's second argument merits closer analysis. DOR argues that even if Congress possesses the constitutional grant of power required to enact law in abrogation of the Eleventh Amendment under its Commerce Clause power, it does not have the necessary authority when legislating pursuant to its Bankruptcy Clause power. The Supreme Court has specifically left this question open. *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 104, 109 S.Ct. 2818, 2824, 106 L.Ed.2d 76 (1989). In support of this contention, DOR points to cases finding a lack of power to abrogate

---

3. In support of this contention DOR points to *Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016 (11th Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995), discussed more fully below. In *Seminole* dicta, the Eleventh Circuit also suggested that the result reached by a "badly fractured" Supreme Court in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), would likely be just the opposite if addressed by "a majority of the present Court." *Seminole*, 11 F.3d 1016, 1026–27 (1994). Thus, the court in

*Seminole* believed that "a fair reading of the *Union Gas* opinion is one that limits Congress' abrogation powers to laws passed under the Interstate Commerce Clause." *Id.* at 1027.

While the court notes *Seminole*'s dicta as advanced by DOR, that case is currently pending before the Supreme Court and its holding, like that of *Union Gas*, is merely analogous to the issue presented here under the Bankruptcy Clause. Therefore there seems little to be gained by conjecture.

sovereign immunity under the Indian Commerce Clause.[4]

The Fourth Circuit has not addressed this specific issue of constitutional law, and there are differences between the other Circuit Courts of Appeal as to the constitutional grant of power needed for Congress to act in abrogation of States' sovereign immunity. The case most strongly advanced by DOR is *Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016 (11th Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995).

In *Seminole*, the Eleventh Circuit held that Congress did not have sufficient constitutional authority to enact a provision abrogating a state's sovereign immunity when acting pursuant to its Indian Commerce Clause powers. The Eleventh Circuit reasoned that two "unique qualities ... distinguish the Interstate Commerce Clause [from] the Indian Commerce Clause." First, the court in *Seminole* declared that the two clauses have different purposes and applications. Whereas the plenary power of the Interstate Commerce Clause authorizes Congress to limit the States "in order to 'maintain[ ] free trade among the States,'" the purpose of the Indian Commerce Clause is to grant Congress "plenary power to legislate in the field of Indian affairs." *Id.* at 1027 (quoting *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192, 109 S.Ct. 1698, 1715, 104 L.Ed.2d 209 (1989)). From this distinction in purpose, the Eleventh Circuit summarily concludes that "the different purposes underlying the two clauses mandate[s] that they be treated distinctly[,] [and] [a]s a result, the unique abrogation power afforded Congress under the Interstate Commerce Clause in *Union Gas* cannot be extended to the Indian Commerce Clause." *Id.*

The second reason supporting the decision in *Seminole* was the Eleventh Circuit's belief that the Supreme Court had previously allowed federal court jurisdiction over an unconsenting state only in cases where the factual pattern demonstrated the state in question participated "in an activity typical of private individuals."[5] *Id.* at 1028. However, the Supreme Court did not utilize this distinction in the two cases in which it specifically decided the issue of the sufficiency of the constitutional grant of power under

**4.** The so-called "Indian Commerce Clause" is actually embodied in the same textual provision as the Interstate Commerce Clause. Article I, § 8, clause 3 of the United States Constitution provides that Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST art. I, § 8, cl. 3.

**5.** The *Seminole* court was presumably referring here to the Supreme Court's decisions in waiver or consent cases, as well as cases of true congressional abrogation. Hence, this reference in *Seminole* may have been alluding to the Court's reasoning in *Parden v. Terminal Railway of the Alabama State Docks Department*, 377 U.S. 184, 196, 84 S.Ct. 1207, 1215, 12 L.Ed.2d 233 (1964), *reh'g denied* 377 U.S. 1010, 84 S.Ct. 1903, 12 L.Ed.2d 1057 (1964), *overruled by Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 478, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). In *Parden*, the Court said: "When a state's consent to suit is alleged to arise from an act not wholly within its own sphere of authority but within a sphere ... subject to the constitutional power of the Federal Government, ... [the state may be deemed to consent to suit by venturing into the congressional realm]." *Parden*, at 196, 84 S.Ct. at 1215. *See also Employees v. Missouri Public Health Department*, 411 U.S. 279, 280–81 at n. 1, 93 S.Ct. 1614, 1615–16 at n. 1, 36 L.Ed.2d 251 (1973) (Court's holding in *Parden* was based on Alabama's operation of railroad as consent to suit). However, this point was specifically overruled by *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 478, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987) (abrogation must be express and clear; will not be implied from state's conduct in field that Congress regulates). Even before *Welch* overruled *Parden*, the distinction made in *Seminole* on the basis of the state's conduct was rejected by the Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ("We are aware of the factual differences between the type of state activity involved in *Parden* and that involved in the present case, but we do not think that difference is material for our purposes.") *Id.* at 452, 96 S.Ct. at 2670.

Moreover, the Court has made a clear distinction between the so-called "consent" cases and cases of true congressional abrogation, and the only two cases to consider the sufficiency of Congress' constitutional power to abrogate sovereign immunity have not employed reasoning based upon the nature of the state's conduct. *Infra* text accompanying note 6. In fact, the Court in *Fitzpatrick v. Bitzer* specifically rejected any arguments premised upon "factual differences between the type of state activity involved." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, 96 S.Ct. 2666, 2670, 49 L.Ed.2d 614 (1976).

which Congress may abrogate States' sovereign immunity.[6] Nevertheless, it is interesting to note that DOR, by accepting payments from a business that later became a debtor, would be engaging in an activity typical of a private individual when compared to the wholly governmental function of negotiating a compact with Indian tribes that was at issue in *Seminole*. *Id.*

DOR merely advances *Seminole* by analogy: If the Indian Commerce Clause does not provide the requisite grant of congressional power to abrogate sovereign immunity, then neither does the Bankruptcy Clause.[7] Moreover, the reasoning supporting the *Seminole* holding appears somewhat cursory. In contrast, *McVey Trucking, Inc. v. Secretary of State of Illinois (In re McVey Trucking, Inc.)*, 812 F.2d 311 (7th Cir.1987), *cert. denied sub nom. Edgar v. McVey Trucking Co.*, 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 provides an extended, scholarly analysis of the exact Bankruptcy Clause issue before the court.

The *McVey* case involved a § 547(b) preference action against the State of Illinois under former § 106(c) which purported[8] to abrogate sovereign immunity as to various Bankruptcy Code sections, including

§ 547(b). In *McVey*, the Seventh Circuit held that Congress may validly abrogate sovereign immunity pursuant to *any* of its plenary powers, including the Bankruptcy power. *McVey*, 812 F.2d 311, 323. As the only existing circuit court opinion directly on point, a detailed study of the *McVey* decision's reasoning is warranted here. Moreover, the United States Supreme Court denied certiorari in *McVey*, and cited it with approval in *Union Gas* only two years later.[9]

The *McVey* opinion begins with the rule that § 5 of the Fourteenth Amendment unquestionably gives Congress the power to abrogate States' sovereign immunity to federal suit. *McVey* at 314 (citing *Fitzpatrick v. Bitzer*, supra). The court in *McVey* then reasons that since both Article I and the Fourteenth Amendment are plenary grants of power to Congress, if the grant in Article I of the Constitution does not include the power to abrogate sovereign immunity, then Congress' powers under Article I must differ from its Fourteenth Amendment power, and could differ in only three conceivable ways. *Id.* at 315. First, the Eleventh Amendment could be the force limiting Congress' power to abrogate States' sovereign immunity, in which case the Fourteenth Amendment could

---

6. These two cases are *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (holding that § 5 of the Fourteenth Amendment supplies Congress with sufficient power to abrogate sovereign immunity) and *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (plurality) (holding that Congress may also validly abrogate sovereign immunity pursuant to its plenary power under the Interstate Commerce Clause).

7. Actually, the power granted by the Bankruptcy Clause would seem to be even more plenary in nature than either the Interstate *or* the Indian Commerce Clauses. *See infra* note 12, and accompanying text.

8. The result reached in *McVey* was overruled by the Supreme Court in *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), but *McVey*'s holding as to the constitutionality of Congress' authority to abrogate state sovereign immunity was not overruled. In *Hoffman* the Court held that the Bankruptcy Code provisions construed in *McVey* did not, in fact, constitute an "unmistakably clear" statement of congressional intent to abrogate sovereign immunity. Only two Supreme Court Justices in *Hoffman* thought

that the power granted to Congress under the Bankruptcy Clause was insufficient to allow enactments of law in abrogation of the States' sovereign immunity.

9. The *Union Gas* plurality opinion states that the Court has three times "assumed" that Congress has the power to abrogate States' sovereign immunity when acting pursuant to the Commerce Clause and "[i]t is no accident, therefore, that every Court of Appeals to have reached this issue has concluded that Congress has the authority to abrogate State's immunity from suit when legislating pursuant to the plenary powers granted it by the Constitution. *See, e.g., ... In re McVey Trucking, Inc.*, 812 F.2d 311 (7th Cir.1987), *cert. denied*, 484 U.S. 895 [108 S.Ct. 227, 98 L.Ed.2d 186]." *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 14–15, 109 S.Ct. 2273, 2281–82, 105 L.Ed.2d 1 (1989) (plurality opinion).

For a penetrating, scholarly opinion supporting the decision reached in *McVey*, *see generally, Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247–302, 105 S.Ct. 3142, 3149–77, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting), *reh'g denied*, 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696.

be a "limited repeal" of the Eleventh Amendment. *Id.* at 315–16. Second, if state sovereignty is the force that limits congressional power to abrogate States' immunity to federal suit, then the Fourteenth Amendment could be an "ultra-plenary" grant of power, superior to the power afforded by Article I. *Id.* at 316. Lastly, even if Congress could validly enact a cause of action against unconsenting States in federal court, state sovereignty could limit the Article III power of the federal courts to issue an enforceable order in such a case. If this were the case, the Fourteenth Amendment might uniquely displace state sovereignty's limit upon the jurisdiction of the federal courts. *Id.*

The Seventh Circuit reasoned through each of the three possible hypotheses listed above, rejecting each. Aside from the Supreme Court's total silence regarding the Fourteenth Amendment as a limited repeal of the Eleventh Amendment, or any significance to the chronology of the two Amendments,[10] the court in *McVey* rejected the "limited repeal" hypothesis on two main grounds. *Id.* at 317.

First, the language and history of the Eleventh Amendment itself shows that the Eleventh Amendment limits the federal courts, not Congress. *Id.* The Eleventh Amendment does not read "Congress shall make no law ..." but rather, "[t]he Judicial power of the United States shall not be *construed* to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI (emphasis added). The Seventh Circuit declared that the branch charged with "construing" is the judiciary, and the language was therefore specifically chosen to limit the judiciary from abrogating the presumptive immunity from suit that the States enjoyed long before the Eleventh Amendment. *Id.* Moreover, the court in *McVey* noted that the Eleventh Amendment was enacted not in response to some congressional action, but to overrule the Supreme Court's decision in *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793). *Id.*

The second reason the *McVey* court rejected the "limited repeal" distinction between Fourteenth Amendment and Article I authority to abrogate sovereign immunity is that while the Eleventh Amendment may have been adopted in part to clarify limits on federal courts' diversity jurisdiction, it was never a general limitation on the jurisdiction of federal courts over cases "arising under" federal law. *Id.* at 317–18. In fact, as the Seventh Circuit pointed out, the Eleventh Amendment was ratified before the courts had federal question jurisdiction, and therefore could not restrict this jurisdiction. *Id.* at 318.[11]

10. Two years later the *Union Gas* plurality agreed that power granted to Congress pursuant to § 5 of the Fourteenth Amendment is not a somehow greater, or "ultraplenary" grant. *Pennsylvania v. Union Gas,* 491 U.S. 1, 17, 109 S.Ct. 2273, 2283, 105 L.Ed.2d 1 (1989) (plurality opinion), and *see* discussion *infra* p. 277. The *Union Gas* plurality also rejected the notion of the Fourteenth Amendment as a "limited repeal" of the Eleventh Amendment. *See id.,* 491 U.S. at 17–18, 109 S.Ct. at 2283 (rejecting Justice Scalia's chronology argument) and *see* discussion *infra* p. 276.

11. The court in *McVey* concluded its rejection of the Eleventh Amendment as a limiting force on either Congress' Article I power or the judiciary's Article III federal question jurisdiction with a close reading of *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), also cited by DOR here, that indicated that *Hans* is often misread. *Id.* at 319–19. The Seventh Circuit said in *McVey* that *Hans* is usually cited for the rule that

"the Eleventh Amendment bars a federal court from taking cognizance of a suit for money damages brought by a citizen against his or her own state even if the citizen's claim 'arises under' federal law." *McVey* at 318. In its motion to dismiss, DOR cites *Hans* for the proposition that "states are immune from suits for monetary damages in federal court [with] such immunity subject to congressional override only in the exercise of power under the Fourteenth Amendment." (Def.'s Mot. to Dismiss at 1). The court rejects both of these characterizations and adopts the *McVey* court's reading as the better reasoned interpretation of *Hans.* Thus, *Hans* stands merely for the rule that "as a sovereign, a state is presumptively immune from suit in a federal court even if the cause of action arises under federal law. [However,] [t]he *Hans* Court did *not* consider the broader question of whether Congress, acting pursuant to its plenary powers, could expressly displace this presumptive immunity." *McVey* at 318 (emphasis added).

Examining its second hypothesis, the Seventh Circuit considered the limitations that state sovereignty might impose on Congress' Article I powers. The court began with the Tenth Amendment rule that "if the states have not delegated plenary power to regulate a given area, state sovereignty bars Congress from creating a cause of action against a state in that area. [However,] when Congress acts in the exercise of one of its delegated plenary powers, state sovereignty generally imposes no limits." *McVey* at 320.

 Although not factually identical, the *McVey* court reasoned that *whenever* Congress creates a cause of action enforceable against a state in the sense that public funds may be required to be spent, the issue of state sovereignty's limitation upon congressional power is the same. Therefore, *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), is applicable. *Garcia* held that "the test of congressional power to impose financial burdens on a state is simply whether the Constitution has 'divested [the States] of their original powers and transferred those powers to the Federal Government.'" *McVey*, 812 F.2d at 320 (quoting *Garcia*, 469 U.S. 528, 549, 105 S.Ct. 1005, 1017, 83 L.Ed.2d 1016 (1985)). Thus, there are not certain elements of state sovereignty which the Constitution makes impervious to Congress' plenary powers. *Id.* Therefore, if under its plenary powers Congress may impose monetary obligations on the States directly, it may also impose monetary burdens through the indirect means of creating a cause of action for a money judgment enforceable against a state. *McVey*, at 320.

The *McVey* opinion concluded its rejection of its second hypothesis by noting that although the Fourteenth Amendment contains an express restriction on state authority, this is an insufficient distinction to warrant restricting congressional power to abrogate state sovereign immunity to only that Amendment since any plenary grant of power will withstand the limitation from state sovereignty. *Id.* at 320–21. "By definition, any grant of power to Congress that is 'plenary' is *ipso facto*, a 'limitation[ ]' on state authority.'" *Id.* at 321 (quoting *Fitzpatrick v. Bitzer*). Thus, the Fourteenth Amendment is not "ultra-plenary."

The *McVey* court's third hypothesis assumes that Congress has Article I authority to create a cause of action for a money judgment against an unconsenting state, and asks whether state sovereignty restricts the federal judiciary's Article III power to issue an enforceable order in such a case. The Seventh Circuit pointed out in a footnote that if such a valid cause of action were not enforceable in the federal courts, it would necessarily have to be enforceable in state courts and, in this case as in *McVey*, that would overturn Congress' longstanding policy of giving the federal courts exclusive jurisdiction over bankruptcy cases. *McVey* at 321, n. 5.

As to whether the restrictions that a state's sovereignty imposes on the federal courts' jurisdiction is the point of distinction between Congress' power to abrogate sovereign immunity under the Fourteenth Amendment versus under other plenary powers, the court in *McVey* conducted a study of relevant case law from 1812 to 1984 and concluded that "the Supreme Court's decisions not to assert federal judicial authority over the states appear[s] to be based on principles of comity [and are not] constitutionally mandated." *Id.* After all, the Seventh Circuit said, if state sovereignty truly posed a constitutional limitation to the judiciary, *all* suits against states—including suits to enjoin federal constitutional violations—would be barred. Moreover, since the Fourteenth Amendment does not contain a special grant of power to the federal courts, if state sovereignty limited the Article III authority of the courts, a federal court would not be able to hear a suit for a money judgment against a state even if the cause of action were created pursuant to Congress' Fourteenth Amendment powers, and this is not the case. *Id.* at 323. Thus, the Seventh Circuit concluded "that state sovereignty does not limit the Article III power of a federal court to order a state to pay money damages" and thereby rejected its third, and final, possible distinction between the validity of sovereign immunity abrogation under the Fourteenth

Amendment and under any other plenary power granted by the Constitution. *Id.*

Having decided that there is no possible constitutional difference between Congress' ability to enact, or the judiciary's ability to enforce, an action for money damages against an unconsenting sovereign state under the Fourteenth Amendment versus under any plenary constitutional power, the *McVey* court observed that the Bankruptcy Clause is a plenary grant of power to Congress.[12] *Id.*

The court here concludes that it must reject the summary reasoning advanced in the merely analogous *Seminole* case in favor of the logical, in-depth justification presented in the *McVey* case, which also has the advantage of being on point.

The Seventh Circuit's final task in *McVey* was to examine the plain language and legislative history of the relevant bankruptcy statues to ascertain the "unmistakably clear" congressional intent to abrogate sovereign immunity. *McVey* at 323–25.

■ In the present case, the congressional intent to abrogate sovereign immunity could not be clearer and indeed, is not contested. Congress made its intention to abrogate sovereign immunity "unmistakably clear" in § 106(a) as amended by the Bankruptcy Reform Act of 1994. As discussed above, Congress had as much authority to do this pursuant to its plenary Bankruptcy Clause power as if it had acted under § 5 of the Fourteenth Amendment.

Moreover, "if a court 'thinking to maintain the "fundamental constitutional balance between the Federal Government and the States" fails to implement the plain intent of Congress, it upsets another fundamental constitutional balance: the balance between the legislature and the judiciary.'" *McVey* at 325 (quoting Note, *Congressional Abrogation of State Sovereign Immunity*, 86 Colum.L.Rev. 1436, 1448 (1986)). Indeed, as

the Seventh Circuit noted, when congressional intent to abrogate sovereign immunity is clear, "[t]he Supreme Court has never failed to give [it] effect." *Id.*

The policy considerations that supported the decision in *McVey* also support the court's ruling here. To hold the amended § 106(a) unconstitutional "would severely impair Congress' plenary power to regulate bankruptcies." *McVey* at 328. Furthermore, finding Congress' clearly stated intent in § 106(a) invalid would have the effect of "holding that the Constitution makes a state a preferred creditor in every bankruptcy" which would lead to "an increase in bankruptcies and a distortion of the system of preferences that Congress has carefully crafted." *Id.* This court will not "put the federal judiciary in the unseemly position of exempting the States from compliance with laws that bind every other legal actor in our Nation." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 248, 105 S.Ct. 3142, 3150, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting).

For all of the reasons stated both here and in *McVey*, Congress was within its constitutional authority when it amended § 106(a) to expressly abrogate the States' Eleventh Amendment and common law sovereign immunity.

Accordingly, DOR's motion to dismiss this adversary proceeding is **DENIED.**

**SO ORDERED.**

---

12. The court notes that at the hearing on this motion, counsel for the plaintiff argued that the plain language of the Bankruptcy Clause which authorizes Congress "[t]o *establish* ... uniform Laws on the subject of Bankruptcies throughout the United States," is a grant of power more clearly plenary in nature than that afforded by the Commerce Clause which merely authorizes Congress "[t]o *regulate* " commerce. U.S. Const. art. I., § 8, cl. 4 and cl. 3 (emphasis added). Moreover, the constitutional mandate for Congress to establish *uniform* bankruptcy laws necessarily and expressly displaces state authority.