In re Daniel J. LEES, Debtor.

Daniel J. Lees, Plaintiff,

v.

Tennessee Student Assistance Corporation, et al., Defendants.

Bankruptcy No. 99–26880K. Adversary No. 99–0727

United States Bankruptcy Court, W.D. Tennessee, Western Division.

July 24, 2000.

Russell W. Savory, Memphis, TN, for Plaintiff/Debtor.

The Honorable Paul G. Summers, Tennessee Attorney General and Reporter, Sally Ramsey, Assistant Attorney General, Tax Division, Bankruptcy Unit, Nashville, TN, for TSAC.

Madalyn S. Greenwood, Memphis, TN, for Assistant United States Trustee for Region 8.

George W. Stevenson, Memphis, TN, for Chapter 7 Trustee.

Michael A. Beatty, Boston, MA, Tucker H. Dewey, Memphis, TN, for The Educational Resources Institution, Inc.

Monica M. Simmons, Assistant United States Attorney, Memphis, TN.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S PRETRIAL MOTION TO DISMISS ADVERSARY PROCEEDING COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

The instant motion of the defendant, Tennessee Student Assistance Corporation ("TSAC"), seeks a pretrial dismissal of the above-referenced dischargeability complaint previously filed under section 523(a)(8) of the Bankruptcy Code ("Code") by the plaintiff, Daniel J. Lees, the above-named chapter 7 debtor ("Debtor"). TSAC primarily argues that it is immune from this "suit" under the Code by virtue

of the 11th Amendment of the United States Constitution.[1]

The sole question for judicial determination here is whether section 106(a) of the Code, as it relates to section 523(a)(8) of the Code, is a constitutionally permissible and valid abrogation of the TSAC's sovereign immunity under the 11th Amendment of the United States Constitution. This is an issue of first impression for this court.

For the reasons discussed below, the court finds and concludes in this core proceeding under 28 U.S.C. § 157(b)(2)($l$), (A), and (O) that section 106(a) of the Code,[2] when read in conjunction with section 523(a)(8), is a constitutionally permissible and valid abroga-

tion of TSAC's sovereign immunity under the 11th Amendment.[3]

Although the parties have a strong difference of opinion regarding the outcome of this proceeding, the relevant background facts are not in dispute and may be briefly summarized as follows: Prior to bankruptcy, the debtor incurred student loan debts. After filing an original, no-asset petition under chapter 7 of the Code, the debtor filed this dischargeability complaint pursuant to section 523(a)(8) of the Code seeking a judicial determination in the bankruptcy court that the outstanding student loan debts owed to TSAC are dischargeable under the "undue hardship" exception.[4] TSAC thereafter filed this mo-

1. The 11th Amendment states:

> The Judicial power of the United States shall be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

2. Section 106 of the Code provides, in its entirety, as follows:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appro-

> priate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
> (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.
> (b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.
> (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

3. The existence of TSAC's constitutional challenge was certified by the court to the Attorney General of the United States in accordance with the statutory requirement of 28 U.S.C. § 2403(a).

4. 11 U.S.C. § 523(a)(8) provides, in relevant part, as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> ***
> (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a

tion seeking a pretrial dismissal of the debtor's pending section 523(a)(8) action for asserted lack of jurisdiction. Debtor opposes TSAC's motion to dismiss this proceeding. Perhaps it is important to note that the debtor only seeks a judicial determination that the particular student loan debts owed to TSAC are subject to a bankruptcy discharge based on the "undue hardship" exception under section 523(a)(8). No money judgment is sought by the debtor against TSAC or the State of Tennessee. Actually, the proceeding under section 523(a)(8) is akin to a declaratory judgment action. See FED.R.BANKR.P. 7001(9).

TSAC contends that because it is an agency or instrumentality of the government of the State of Tennessee, it is immune from this proceeding filed in the United States bankruptcy court by virtue of the 11th Amendment.[5] Consequently, TSAC seeks a pretrial dismissal of this dischargeability action for asserted lack of jurisdiction stating that the enactment of section 106(a) of the Code, subjecting state governmental units to 60 specifically enumerated sections of the Code and the federal bankruptcy court's remedial powers, violates the 11th Amendment and also has been thwarted by the United States Supreme Court's non-bankruptcy decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("*Seminole Tribe* ").[6]

As a result of the 11th Amendment and *Seminole Tribe*, among other cases, TSAC, in essence, argues that a state governmental unit can no longer be sued in the bankruptcy court for any type of significant relief, unless the state gives its express consent to such proceedings.[7] TSAC

---

5. governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend unless exception such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

5. 11 U.S.C. § 101(27) provides as follows: "governmental unit" means United States; State; commonwealth; District; Territory; municipality; foreign state; department; agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, A district, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

TSAC is a governmental corporation created by the Tennessee Legislature for the purpose of facilitating student loans in Tennessee. As such, it is an agency, unit, or instrumentality of the State of Tennessee. TENN.CODE ANN §§ 49–4–201–212; 49–4–401–508.

6. At issue in *Seminole Tribe* was whether the United States Congress had the power to abrogate the states' sovereign immunity pursuant to congressional authority under the Indian Commerce Clause in Article I of the Constitution when it enacted the Indian Gaming Regulatory Act. *Seminole Tribe* involved a private suit against an unconsenting state in a federal court. The Supreme Court

overturned an abrogation of the 11th Amendment immunity by means of an exercise of the Congress' Article I power under the Constitution's Indian Commerce Clause. The majority opinion, however, did not resolve (or even raise) the specific question whether the 11th Amendment also bars a suit under the Code against a unit of the government of a state in a federal court. The question of 11th Amendment's possible impact on the bankruptcy laws was raised by Justice Stevens' dissenting opinion. *Id.* at 77, 116 S.Ct. 1114. See Justin V. Switzer, *Note, Did They Really Think This Over? Seminole Tribe v. Florida and the Bankruptcy Code*, 34 HOUS. L.REV. 1243, 1257–58 (1997) (asserting that the majority in *Seminole Tribe* failed to address the Congress' power to abrogate states' immunity under the bankruptcy clause). Notwithstanding the dicta, *Seminole Tribe* held only that the 11th Amendment precluded the Congress from abrogating a state's constitutional immunity from suit in a federal court by means of a statute enacted pursuant to the Indian Commerce Clause in Article I, Section 8. Compare *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *College Savings Bank v. Florida Prepaid Postsecondary Edu. Expense Fund*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

7. State governmental units are among the largest creditors who appear in the bankruptcy courts. See *State Bankruptcy Survey Re-*

has given no such consent in the present action. If TSAC is correct in its legal position, the United States bankruptcy courts, in reality, are without meaningful authority to issue any orders, judgments, or decrees affecting the interests of a state or a unit of a state, absent the express consent of the governmental unit.[8]

TSAC's motion to dismiss this complaint for lack of jurisdiction specifically provides as follows:

"1. Pursuant to the Eleventh Amendment of the Constitution of the United States, the federal courts are without jurisdiction in suits brought by individuals against a State. The only exceptions to this rule are when the state has consented to such suit or when the suit is brought to enforce Fourteenth Amendment due process rights.

2. TSAC [Tennessee Student Assistance Corporation] is a unit of the government of the State of Tennessee.

3. TSAC has not consented to this suit.

4. This suit is not brought to enforce a constitutional right which has been denied without due process by the State of Tennessee.

5. Accordingly, the Eleventh Amendment of the United States deprives the court of jurisdiction to hear this suit."

Briefly and simply stated, the debtor, not surprisingly, opposes TSAC's motion to dismiss this complaint for lack of jurisdiction and primarily contends that section 106(a) of the Code is constitutional and also that TSAC is not a governmental unit entitled to constitutional protection under the 11th Amendment. Debtor, therefore, asserts that this court has jurisdiction over both TSAC and the subject matter of this complaint.

Student loan debts, along with a very limited number of others,[9] are specially treated under the Code. This type of debt (*i.e.*, a student loan) is not routinely discharged (or automatically excepted from discharge). Instead, the Congress established a unique approach to the dischargeability of student loan debts. Section 523(a)(8) of the Code allows for a discharge of a student loan debt upon the filing of a successful complaint by the debtor pursuant to FED.R.BANKR.P. 7001(6), when excepting such debt from discharge would impose an "undue hardship" on the debtor and the dependents of the debtor.[10] Also, a creditor (*e.g.*, TSAC) may file a complaint under section 523(a)(8) and FED.R.BANKR.P. 7001(6) seeking a judicial determination that a particular student loan debt is nondischargeable. See FED.R.BANKR.P. 4007(a). Interestingly, the bankruptcy court and the state court have concurrent jurisdiction to address the dischargeability of student loan debts under section 523(a)(8) of the Code.[11]

The debatable issue of the constitutionality of section 106(a) of the Code is ongoing and has engendered much discussion and controversy resulting in a sharply divided split of judicial authority among the lower federal courts and legal scholars.[12] This conflict of authority has created constitutional confusion and uncertainty resulting in a lack of uniformity in the nation's bankruptcy system.

This court, like the court in *In re Straight*, 248 B.R. 403, 422 (10th Cir. BAP 2000), is of the opinion that a constitutional analysis of section 106(a) of the Code

---

*sults*, BANKR.CT.DEC., WEEKLY NEWS AND COMMENT, at p. A1 (Nov. 19, 1996).

8. See generally Richard Lieb, *Eleventh Amendment Immunity of a State in Bankruptcy Cases: A New Jurisprudential Approach*, 7 AM.BANKR.INST.L.REV. 269 (Spring 1999).

9. See, e.g., 11 U.S.C. § 523(a)(1) (certain taxes) and (5) (alimony and child support).

10. See also 42 U.S.C. § 292f(g) (regarding "HEAL" student loan debts).

11. See 28 U.S.C. § 1334(b); cf. 11 U.S.C. § 523(c)(1).

12. See, e.g., Lieb, *supra* note 8.

should be made on a statute-by-statute basis. Section 106(a) of the Code provides, in pertinent part, that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections . . . 523 . . . ." Section 106(a)(2) provides that the court may hear and determine any issue arising under the 60 specific sections enumerated in section 106(a)(1).[13] Section 106(a)(3) and (4) provide the statutory grounds for the court to issue an enforceable money judgment against a governmental unit in any of the 60 sections cited in section 106(a)(1), excluding an award of punitive damages.[14]

▮▮▮ The law is well settled that a statute of the United States Congress (*e.g.*, section 106(a)) enjoys a presumption of constitutionality. See, among others, *Usery v. Turner Elkhorn Mining Co.*, 428

U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). It is emphasized in this action that any analysis of the constitutionality of a statute must begin with the presumption that the statute is constitutionally valid. *U.S. v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *U.S. ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827, 830 (9th Cir.1993). It is further emphasized that this presumption is strongest when the Congress determines that it has the power to enact the statute. See, e.g., *Rostker v. Goldberg*, 453 U.S. 57, 64, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); see also Section 5 of the 14th Amendment[15] and Article I, Section 8, Clause 4 of the United States Constitution (discussed more fully infra).

▮▮▮ It is now well established that the legislative acts adjusting the burdens and benefits of economic life[16] come to the

---

**13.** Subsection (b) of section 106 of the Code was clarified in 1994 by allowing a compulsory counterclaim to be asserted against a governmental unit only where such unit has actually filed a proof of claim in the bankruptcy case. This has the effect of overruling contrary case law, such as *Sullivan v. Town & Country Nursing Home Serv., Inc.*, 963 F.2d 1146 (9th Cir.1992); *In re Gribben*, 158 B.R. 920 (S.D.N.Y.1993); and *In re the Craftsman, Inc.*, 163 B.R. 88 (Bankr.W.D.Tex.1994).

**14.** Subsection (c) of section 106 was amended in 1994 to expressly provide for a waiver of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief. It effectively overrules. *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), and *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

**15.** The 14th Amendment provides, in relevant part here, as follows:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due pro-

cess of law; nor deny to any person within its jurisdiction the equal protection of the laws.

\*\*\*

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

**16.** Public interest and other social and economic concerns are injected into the federal bankruptcy laws. The general philosophy of the bankruptcy laws is "to give the [honest but unfortunate] debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure of discouragement of preexisting debt.' " *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). A co-equal purpose of the bankruptcy laws is to promote equality of treatment among creditors similarly situated. In essence, the bankruptcy laws displace the various state debt collection processes in favor of a uniform collective process in the federal bankruptcy court. Bankruptcy laws are characterized by the inherent tension among divergent interests. There are many competing and countervailing interests to consider including the interests of state governmental units in given cases. It has been said that bankruptcy is a distinct system of jurisprudence—the nature of which is to sort out all of the debtor's legal relationships with others, and to apply the uniform principles and rules

court with the presumption of constitutionality and that the burden is on the complainant to establish that the legislature has acted in an arbitrary and irrational way. *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487–488, 75 S.Ct. 461, 99 L.Ed. 563 (1955); see also *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). Indeed, it is well settled that a presumption exists in favor of the constitutionality of an act of the Congress. *Regan v. Time, Inc.,* 468 U.S. 641, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984); *Rostker v. Goldberg,* 453 U.S. 57, 64, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981). Mere uncertainty as to the constitutionality of a statute does not rebut that presumption. See, e.g., *In re Lombard–Wall, Inc.,* 44 B.R. 928 (Bankr.S.D.N.Y.1984).

The power granted by the Bankruptcy Clause in Article I, Section 8, Clause 4 of the Constitution[17] appears to be more plenary in nature than the Indian Commerce Clause[18] (or the Interstate Commerce Clause).[19] The unambiguous language of

the Bankruptcy Clause constitutionally authorizes the Congress to establish uniform laws on the subject of bankruptcies throughout the United States. The constitutional authorization for the Congress to establish uniform (and rational) bankruptcy laws is seemingly paramount. See, e.g., *McVey Trucking, Inc. v. Secretary of State of Illinois (In re McVey Trucking, Inc.),* 812 F.2d 311 (7th Cir.1987), *cert. den., sub. nom. Edgar v. McVey Trucking Co.,* 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987); see generally *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 247–302, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting), *reh'g den.*[20]

In the instant action involving sections 106(a) and 523(a)(8) of the Code, this trial bankruptcy court fully recognizes and is judicially sensitive to the *strong* presumption of the constitutionality of section 106(a) of the Code. Concomitantly, the court adopts the well reasoned analysis of the Honorable A. Thomas Small in *In re York–Hannover Developments, Inc.,* 181 B.R. 271 (Bankr.E.D.N.C.1995), a pre-*Seminole Tribe* decision, holding that the

of the bankruptcy laws to those relationships, with the goal of either financially rehabilitating a distressed debtor or assembling and liquidating the debtor's asset for distribution to creditors. To accomplish these goals, modifications of pre-bankruptcy debtor-creditor relationships are required. Thus, a claim in bankruptcy may be satisfied in a manner far different from that which was originally contemplated by the parties. Pre-existing legal relationships are disturbed from a broad prospective, subject to many statutory safeguards. For example, a bankruptcy discharge is a privilege and not a constitutional right. *U.S. v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Only honest debtors (who pay their case filing fees) receive bankruptcy discharges. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230, (1934); 28 U.S.C. § 1930(a). Section 727(a) of the Code sets forth the statutory grounds to deny a debtor's general discharge. Notwithstanding an honest debtor's general discharge, as a matter of legislative policy, certain debts are not subject to a discharge by virtue of section 523(a) of the Code, which includes most student loan debts under section 523(a)(8).

17. Article I, Section 8, Clause 4 of the Constitution provides, in relevant part, that the Congress shall have power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States."

18. Article I, Section 8, Clause 3 of the Constitution provides that the Congress shall have the power "[t]o regulate Commerce ... with the Indian Tribes."

19. Article I, Section 8, Clause 3 of the Constitution also provides that the Congress shall have the power "[t]o regulate Commerce ... among the several States...."

20. In the *McVey* case, the Seventh Circuit in a section 547(b) preference action under the Code against the State of Illinois held that the Congress may validly abrogate sovereign immunity pursuant to any of its plenary powers, including the bankruptcy powers. *Id.* at 323. Perhaps it is important to note that the Supreme Court denied certiorari in *McVey.* Actually, the Supreme Court later cited *McVey* with approval in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 14–15, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (plurality opinion).

Congress was within its constitutional authority when it amended section 106(a) of the Code in 1994 to expressly abrogate the states' 11th Amendment and common law sovereign immunity with respect to the specifically enumerated Code provisions. See also, e.g., the following post-*Seminole Tribe* cases supporting constitutionality, *In re Willis*, 230 B.R. 619 (Bankr.E.D.Okla. 1999); *In re Ranstrom*, 215 B.R. 454 (Bankr.N.D.Cal.1997); the dissenting opinion in *In re Straight*, 248 B.R. 403, 421–430 (10th Cir. BAP 2000); contra, e.g., *In re Mitchell*, 222 B.R. 877 (9th Cir. BAP 1998); *Morrell v. Franchise Tax Bd. (In re Morrell)*, 218 B.R. 87 (Bankr.C.D.Cal.1997); *In re Taylor*, 249 B.R. 571 (Bankr.N.D.Ga. 2000).

■ The United States Supreme Court has articulated the following two-prong test to determine whether the Congress can validly abrogate states' 11th Amendment sovereign immunity: (1) whether the Congress unequivocally expressed its intent to abrogate the states' sovereign immunity, and (2) whether the Congress acted pursuant to a valid exercise of power. *See, e.g., Seminole Tribe*, 517 U.S. at 55–56, 116 S.Ct. 1114.[21] Judge Small held in *In re York–Hannover Developments, Inc.*, 181 B.R. 271 (Bankr.E.D.N.C.1995), that the Congress was within its constitutional authority when it passed section 106(a) of the Code. Judge Small recognized that section 106(a) is an unmistakably clear abrogation of the states' sovereign immunity as it relates to section 106(a) of the Code. Judge Small further recognized that the Code contains a vast number of privileges and immunities which are validly enforceable through Section 5 of the 14th Amendment; and he rightfully concluded that section 106(a) was validly enacted pursuant to the 14th Amendment and is, therefore, a constitutionally permissible and valid exercise of the judicial power of the United States.

■ The sovereign immunity of a state cannot always be readily reconcilable with the Congress' exercise of the Bankruptcy Clause contained in Article I, Section 8, Clause 4, of the Constitution. The national scope of the federal bankruptcy laws and underlying policies[22] preclude a state, or a unit of a state, from inappropriately intruding upon the Congress' exercise of its bankruptcy and 14th Amendment powers. See generally, *New York v. Irving Trust Co.*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933). The Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), recognized Section 5 of the 14th Amendment as being a constitutionally acceptable source or means of abrogating states' sovereign immunity.[23] TSAC's legal position in this

---

21. See also *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), cited with approval in *Seminole Tribe*, 517 U.S. at 55–56, 116 S.Ct. 1114.

22. The Supreme Court has addressed the purposes of the bankruptcy laws on various occasions. For example, in In *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918), the Court stated:

"The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law—as one not only of private but of great public interest in that it secures to the unfortunate debtor, who surrenders his property for distribution, a new opportunity in life. *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1877) *Traer v. Clews*, 115 U.S. 528, 541, 6 S.Ct. 155, 29 L.Ed. 467; *Hanover National Bank v. Moyses*, 186 U.S. 181, 192, 22 S.Ct. 857, 46 L.Ed. 1113 (1902); *Wetmore v. Markoe*, 196 U.S. 68, 77, 25 Sup.Ct. 172, 49 L.Ed. 390, 2 Ann.Cas. 265 (1904); *Burlingham v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A.N.S. 148 (1913)."

23. See also *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (plurality) (holding that the Congress may validly abrogate sovereign immunity pursuant to its plenary power under the Interstate Commerce Clause); cf. *United States v.*

action summarily frustrates and denies the full meaning and effectiveness of the uniform laws of the United States Congress relating to bankruptcy, especially when considering the Supremacy and Bankruptcy Clauses in connection with the 14th Amendment. See, e.g., *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

■ The two-prong test articulated by the Supreme Court in *Seminole Tribe* is constitutionally satisfied here: that is, (1) the Congress unequivocally expressed its clear intent in section 106(a) of the Code to abrogate the states' sovereign immunity, and (2) the Congress acted pursuant to a valid exercise of its power under the 14th Amendment (and Article I, Section 8, Clause 4 of the Constitution). See *In re Willis,* 230 B.R. 619 (Bankr.E.D.Okla. 1999), for a scholarly analysis of this issue. This result also is consistent with the Supreme Court's prior recognition that the collective nature of a uniform system on the subject of the federal bankruptcy laws requires that some limitations be imposed upon states' sovereign immunity. Compare, e.g., *International Shoe Co. v. Pinkus,* 278 U.S. 261, 265, 49 S.Ct. 108, 73 L.Ed. 318 (1929); *also compare Innes v. Kansas State University (In re Innes),* 184 F.3d 1275 (10th Cir.1999).[24] Consider-

ing the national scope and intent of the uniform bankruptcy laws and the congressional policies that underlie them, it additionally is noted that the Supreme Court has been protective of the bankruptcy court's jurisdiction. See, e.g., *New Jersey v. Anderson,* 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906); *New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *Reitz v. Mealey,* 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941); *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

■ In light of all the foregoing, this court respectfully believes that the Supreme Court would hold, in the context of a given bankruptcy case under title 11 of the United States Code, that section 106(a), as it relates to section 523(a)(8), is a constitutionally valid and appropriate abrogation of the states' sovereign immunity under the 11th Amendment. Until the Sixth Circuit Court of Appeals or the United States Supreme Court resolves this critical issue, this court will rely on the strong presumption in favor of the constitutionality of section 106(a) and the persuasive reasoning of, e.g., *In re York–Hannover Dev., Inc.,* 181 B.R. 271 (E.D.N.C.1995) and *In re Willis,* 230 B.R. 619.[25]

*Nebraska (In re Doiel),* 228 B.R. 439, 443 (D.S.D.1998) (citing numerous opinions holding that the Congress cannot abrogate states' immunity under the 14th Amendment).

**24.** In *In re Innes,* supra, the 10th Circuit Court of Appeals held that Kansas State University waived its 11th Amendment immunity—and thereby submitted to the jurisdiction of the bankruptcy court for the purpose of an adversary proceeding to determine "undue hardship" under section 523(a)(8)—when the university entered into a federal student loan participation contract that explicitly required it to perform the functions and activities set forth in 34 C.F.R. § 674. *In re Innes,* 184 F.3d at 1281. This regulation, inter alia, requires an educational institution to honor a bankruptcy court's stay under section 362(a) and to follow certain other enumerated procedures if properly served with a student loan dischargeability complaint under the Code.

**25.** As discussed earlier, the Supreme Court never has held that the 11th Amendment bars the Congress from abrogating the states' sovereign immunity under the Bankruptcy Clause. The dicta in *Seminole Tribe* is subject to revisitation in a new context (*i.e.,* a reexamination within the confines of a particular bankruptcy case under title 11 of the United States Code). Dicta is not covered by the doctrine of collateral estoppel because this doctrine requires that the conclusion sought to be given preclusive effect actually formed a necessary part of the ultimate decision reached by the court. That is, a significant corollary to the doctrine of collateral estoppel is that dicta have no preclusive effect. See, e.g., *In re Cassidy,* 892 F.2d 637, 640 (7th Cir.1990); *Coleman v. Miller,* 117 F.3d 527, 530 n. 7 (11th Cir.1997); *Ducey v. U.S.,* 830 F.2d 1071, 1072 (9th Cir.1987); *Russell v. C.I.R.,* 678 F.2d 782, 785 (9th Cir.1982); *In re Professional Investment Properties of America,*

The court also has considered a recent article that appears in The American Bankruptcy Law Journal, Vol. 74 (Winter 2000), entitled *A Bankruptcy Exception to Eleventh Amendment Immunity Limiting the Seminole Tribe Doctrine.* After a comprehensive analysis and discussion of the pertinent issues and relevant case law, the author concludes as follows:

> The Supreme Court has recognized that "the Eleventh Amendment implicates the fundamental constitutional balance between the Federal Government and the States." This balance will be lost in the operation of the Bankruptcy Code, if states have the option of excluding themselves from the system's operation. The Bankruptcy Clause's uniformity requirement, the system's distinctive collective nature and past Supreme Court precedent provide an ample basis for upholding the abrogation of state sovereign immunity in § 106(a) of the Bankruptcy Code without undermining a broad interpretation of Eleventh Amendment immunity. As is true of most areas of the law, the *Seminole Tribe* doctrine also requires its exceptions, if it is to remain a viable rule of constitutional law.[26]

For the reasons discussed above, and especially relying upon the strong presumption of constitutionality existing here, the court finds and concludes in this action that section 106(a) of the Code, as it specifically relates to section 523(a)(8), permissibly, validly, and constitutionally abrogates TSAC's sovereign immunity under the 11th Amendment, notwithstanding TSAC's arguments or the *Seminole Tribe* (and related) dicta previously mentioned. This court also expressly finds, for the reasons articulated by TSAC, that TSAC is an agency or instrumentality of the State of Tennessee. TSAC has not, however, demonstrated or established that the Congress acted in an arbitrary and irrational way when it passed sections 106(a) and 523(a)(8) of the Code.[27] Thus, the requirements have been met in this action to abrogate TSAC's sovereign immunity under the 11th Amendment. The Congress has not exceeded its authority.

Accordingly, the debtor's complaint previously filed under section 523(a)(8) of the Code against TSAC will be allowed to proceed to a full trial on the merits in the United States bankruptcy court to ultimately determine whether the student loan debts in question actually are subject to a bankruptcy discharge. TSAC's pretrial motion seeking to dismiss the debtor's dischargeability complaint under section 523(a)(8) of the Code for lack of jurisdiction is hereby denied. This result does not undermine the 11th Amendment immunity of the States. Instead, it simply means that this dischargeability action under section 523(a)(8) will be heard and decided in the bankruptcy court, rather than the state court, pursuant to the concurrent and bifurcated jurisdictional scheme established under 28 U.S.C. §§ 1334(a)–(b), 157(a)–(d), and 151.

Based on the foregoing and consideration of the case and adversary proceeding records as a whole,

**IT IS ORDERED AND NOTICE IS HEREBY GIVEN** that the motion of the

Inc., 157 B.R. 166 (Bankr.W.D.Wash.1993); *In re Access Beyond Technologies, Inc.* 237 B.R. 32 (Bankr.D.Del.1999). Dicta does not constitute binding precedent. See, e.g., *Colgrove v. Battin*, 413 U.S. 149, 157, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (declining to follow dicta stating that the 7th Amendment requires a jury of 12 persons in civil trials); see also *U.S. v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

26. 74 Am.Bankr.L.J. 1, 31 (Winter 2000).

27. TSAC bears the burden of showing that it is entitled to sovereign immunity under the 11th Amendment. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 487–488, 75 S.Ct. 461, 99 L.Ed. 563 (1995); see also *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

defendant, TSAC, seeking to dismiss the plaintiff-debtor's complaint previously filed under section 523(a)(8) of the Code is denied and a pretrial conference to consider this adversary proceeding will be held on August 15, 2000, at 10:00 a.m.